**BUTTERFIELD LUMBER, INC.,**
**Plaintiff and Appellee,**

v.

**PETERSON MORTGAGE CORPORATION; Jon L. McCloy, d/b/a/ McCloy Construction; James A. Arrowsmith; Gayle Z. Arrowsmith; Ideal Concrete Corporation; Reid's Concrete Service, Inc.; Davis Brothers Cabinetmakers, Inc.; and John Doe I, Defendants and Appellants.**

**No. 900425–CA.**

Court of Appeals of Utah.

July 23, 1991.

---

Kent B. Linebaugh (argued), James L. Thompson, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for defendants and appellants.

David K. Broadbent (argued), Thomas M. Melton, Prince, Yeates & Geldzahler, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Peterson Mortgage Corporation (Peterson Mortgage) appeals the entry of summary judgment in favor of appellee Butterfield Lumber, Inc. (Butterfield). Butterfield acquired a mechanics' lien on a piece of real property in Salt Lake County. Peterson Mortgage then recorded a trust deed on the same property. Subsequently, Butterfield brought an action to foreclose its mechanics' lien. While the lien foreclosure was pending, Peterson Mortgage foreclosed its trust deed and the subject property was ultimately sold to a third party who did not have notice of the mechanics' lien. The trial court held that Butterfield's mechanics' lien attached to the proceeds of the sale to the third party. We affirm.

## BACKGROUND

The parties to this appeal agree on the material facts. At 3 p.m. on January 9, 1987, Butterfield began supplying construction materials for the subject property. At 4:38 p.m. that same day, Peterson Mortgage, the construction lender, recorded a trust deed on the property. Butterfield last supplied materials for the property on April 10, 1987.

On June 18, 1987, Butterfield recorded notice with the Salt Lake County Recorder that it claimed a mechanics' lien on the property, as required by Utah Code Ann. § 38-1-7(1) (1988). The notice was signed by Butterfield's president, but contained no formal acknowledgment or certification.

The property owner failed to pay for the materials supplied by Butterfield, and also defaulted on the loan from Peterson Mortgage which was secured by the trust deed. Butterfield therefore filed a civil complaint on April 6, 1988, seeking, among other things, to foreclose its mechanics' lien. The complaint was served on all interested parties named as defendants, including Peterson Mortgage, which was served on April 9, 1988. Butterfield did not, however, record a lis pendens on its foreclosure action, as provided under Utah Code Ann. § 38–1–11 (1988).

On April 11, 1988, after being served with Butterfield's complaint, Peterson Mortgage initiated nonjudicial foreclosure of its trust deed on the property. On August 15, 1988, while Butterfield's judicial mechanics' lien foreclosure action was still pending, Peterson Mortgage sold the property at a trust deed sale to its president, Leon Peterson. Leon Peterson, in January 1989, then sold the property to Peter Wright–Clark, who had no notice of Butterfield's mechanics' lien or the foreclosure action.

Peterson Mortgage then moved to dismiss Butterfield's mechanics' lien foreclosure claim, arguing that because Butterfield's lien had not been formally acknowledged, it was invalid. This motion was denied. Butterfield then moved for summary judgment, arguing that its lien attached to the proceeds of the property's sale to Wright–Clark. The trial court agreed with Butterfield and granted summary judgment, awarding Butterfield the value of the materials furnished, plus interest, attorney fees, and costs, to be paid by Peterson Mortgage out of the proceeds from the sale of the property to Wright–Clark.

## ISSUES AND STANDARD OF REVIEW

■ On appeal, Peterson Mortgage first argues that the denial of its motion to dismiss was improper, because Butterfield's failure to have its mechanics' lien notice formally acknowledged rendered the lien invalid. This issue turns on the trial court's interpretation of a statute, which

we review without deference. *See Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989); *State v. Serpente*, 768 P.2d 994, 995 (Utah App.1989).

Peterson Mortgage's second argument is that Butterfield's mechanics' lien attached only to the subject real property, and not to the proceeds of Peterson Mortgage's sale of the property. Because the parties agree on the material facts, the grant of summary judgment on this issue also turns solely on the trial court's interpretation of statutes, and will also be reviewed without deference.

## ANALYSIS

### *Statutory Construction*

■ Unless the language is ambiguous, we construe statutes according to their plain meaning. *Berube*, 771 P.2d at 1038. If ambiguity exists, "it is appropriate to analyze the act in its entirety, in the light of its objective, and to harmonize its provisions in accordance with the legislative intent and purpose." *Ward v. Richfield*, 798 P.2d 757, 760 (Utah 1990) (quoting *Osuala v. Aetna Life & Cas.*, 608 P.2d 242, 243 (Utah 1980)).

### *Acknowledgment of Mechanics' Lien*

Peterson Mortgage argues that Butterfield's mechanics' lien was invalid because notice of the lien was recorded without a formal acknowledgment or verification. The portion of Utah's mechanics' lien law relevant to this argument requires that the notice of lien contain "the signature of the lien claimant or his authorized agent and an acknowledgment or certificate as required under Chapter 3, Title 57. *No acknowledgment or certificate is required for any notice filed after April 29, 1985, and before April 24, 1989.*" Utah Code Ann. § 38–1–7(2)(e) (Supp.1991) (emphasis added).

■ Because Butterfield filed notice of its lien in June 1987, under section 38–1–7(2)(e), no acknowledgment or certificate was required. Peterson Mortgage, however, argues that acknowledgment of Butterfield's lien notice was necessary under

Utah Code Ann. § 57–3–1, one of Utah's statutes dealing generally with the recording of documents affecting real estate. This argument fails under the plain language of section 38–1–7(2)(e), which requires a "Chapter 3, Title 57" acknowledgment of all mechanics' lien notices *except* those filed within a particular time period. It is thus abundantly clear that the legislature had section 57–3–1 in mind when it drafted section 38–1–7(2)(e), and specifically intended to eliminate the section 57–3–1 acknowledgment requirement from mechanics' lien notices filed within the period when the notice in question was filed. The motion to dismiss Butterfield's mechanics' lien foreclosure because the notice of lien was not acknowledged was therefore properly denied.

### *Attachment of Mechanics' Lien to Proceeds of Sale*

Peterson Mortgage next argues that Butterfield's lien did not attach to the proceeds of the property's ultimate sale to a third party without notice of Butterfield's pending lien foreclosure. We disagree.

The parties agree that Butterfield's notice of lien was timely recorded under Utah Code Ann. § 38–1–7 (1988 and Supp.1991). Assuming, as we have held, that the notice was valid without an acknowledgment, the parties also agree that Butterfield's lien, because it relates back to the time when materials were first supplied to the property, had priority over Peterson Mortgage's trust deed. Utah Code Ann. § 38–1–5 (1988). The parties also agree that Butterfield's action to foreclose the mechanics' lien was timely commenced and that because Peterson Mortgage and Leon Peterson had actual knowledge of the foreclosure action, the lien was valid against their interests in the property. Utah Code Ann. § 38–1–11. Finally, the parties agree that because no lis pendens was ever filed and because Wright–Clark, the ultimate purchaser of the property, had no actual notice of the lien foreclosure, Butterfield's mechanics' lien was void as against Wright–Clark's title to the property. *Id.*

The disagreement here is over the effect of Butterfield's failure to record a lis pendens upon its action to foreclose its lien against Peterson Mortgage. Peterson Mortgage argues that once the property was sold to Wright–Clark, who had no notice—either actual or by virtue of a recorded lis pendens—of the pending mechanics' lien foreclosure, Butterfield's lien vanished altogether. Peterson Mortgage claims support for this argument from a single sentence in Utah Code Ann. § 38–1–3 (1988), part of our mechanics' lien law. Section 38–1–3 reads, with our emphasis:

> Contractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise. *This lien shall attach only to such interest as the owner may have in the property.*

According to Peterson Mortgage, the final sentence of section 38–1–3 means that once it sold the subject property, and thus no longer had an ownership interest in it, it held nothing to which Butterfield's lien could attach. Section 38–1–3 has never been so expansively construed, however, and to do so under the facts of this case would defeat the purpose of the mechanics' lien law.

The language in question has long been understood to mean simply that the owner of real property, within the meaning of the mechanics' lien law, can cause only his or her particular ownership interest, or bundle of property rights, to be burdened by a mechanics' lien. Where the owner who directs property improvement is, for example, a lessee who directs such improvement without the authority of the lessor, only

the leasehold interest is burdened by the resulting mechanics' lien; the lessor's interest is not affected. *See, e.g., Interiors Contracting, Inc. v. Navalco,* 648 P.2d 1382, 1390 (Utah 1982); *Sanford v. Kunkel,* 30 Utah 379, 85 P. 363, 365, *modified on reh'g,* 30 Utah 379, 85 P. 1012 (1906); *Morrow v. Merritt,* 16 Utah 412, 52 P. 667, 668 (1898); *John Wagner Assocs. v. Hercules, Inc.,* 797 P.2d 1123, 1130–31 (Utah App. 1990); *Martindale v. Adams,* 777 P.2d 514, 515–16 (Utah App.1989). The interpretation of the final sentence of section 38–1–3 urged by Peterson Mortgage would give it an additional significance that would defeat the purpose of the mechanics' lien law.

"The purpose of the Utah mechanics' lien law is to provide protection to those who enhance the value of a property by supplying labor or materials." *AAA Fencing Co. v. Raintree Dev. and Energy Co.,* 714 P.2d 289, 291 (Utah 1986). To effect that purpose, the law is to be construed broadly. *Navalco,* 648 P.2d at 1386; *John Wagner Assocs.,* 797 P.2d at 1125.

It is true, as pointed out by Peterson Mortgage, that in order to obtain the protection afforded by the mechanics' lien law, the lien claimant must comply with the requirements of the foreclosure action, as required by section 38–1–11, and therefore Butterfield had no lien on the property once Wright–Clark purchased it. Section 38–1–11 thereby limits the protection afforded to one who supplies labor or materials to property so as to not affect one who purchases the property without notice of actions to foreclose a lien. This limitation protects the interests of those who, like Wright–Clark, purchase property without actual knowledge of a pending lien foreclosure action. *See Projects Unlimited v. Copper State Thrift,* 798 P.2d 738, 743 (Utah 1990) (discussing balance of interests sought by mechanics' lien law).

However, the section 38–1–11 protection of third party purchasers without notice of a mechanics' lien foreclosure does not extend to those who acquire ownership with such notice. By the terms of section 38–1–11, the lien remains in effect "as to persons who have been made parties to the [foreclosure] action and persons having actual knowledge of the commencement of the action...." *See also Harris–Dudley Plumbing Co. v. Professional United World Travel Ass'n,* 592 P.2d 586, 589 (Utah 1979). Here, because Butterfield properly named and served Peterson Mortgage as a party to the lien foreclosure, it met the statutory requirements for preserving its lien against Peterson Mortgage's interest in the property in question.

By insisting that section 38–1–3 limits attachment of a mechanics' lien only to real property, Peterson Mortgage is seeking to create a loophole whereby in failing to protect its lien against possible third party purchasers without notice, a lienholder also loses the lien against an owner who is a notified party to an action to foreclose the lien. All such an owner needs to do is to sell the subject property to a third party without notice of the lien foreclosure, prior to the time the lien foreclosure is adjudicated, and the lien vanishes. We do not believe that the mechanics' lien law is intended to facilitate such a disappearing act with respect to lien rights against a party with notice of a lien foreclosure action. Such an interpretation would undermine the protection of laborers and materialmen that the law seeks to provide.

Courts in other jurisdictions have held that when a valid lien attaches to property and the owner of the property then disposes of it so as to extinguish the lien on the property itself, the lien attaches to the proceeds received by the owner. *See, e.g., Farmer's Feed & Supply Co. v. Industrial Leasing Corp.,* 286 Or. 311, 594 P.2d 397, 400 (1979); *Moore v. Boxman,* 144 Ind. App. 252, 245 N.E.2d 866, 869–70 (1969); *Marshall Savings & Loan Ass'n v. Chicago Nat'l Bank,* 56 Ill.App.2d 372, 206 N.E.2d 117, 120 (1965); *Division of Labor Law Enforcement v. Siskiyou Mills,* 229 Cal.App.2d 105, 40 Cal.Rptr. 111, 114–15 (1964); *Morgan Plan Co. v. Bruce,* 266 Ala. 494, 97 So.2d 805, 808 (1957); *Continental Supply Co. v. White,* 92 Mont. 254, 12 P.2d 569, 575 (1932).

The common underlying feature in the cases granting a lien on the proceeds from

the disposal of liened property is an element of wrongfulness in the owner's disposal of the property. *See also* 51 Am. Jur.2d *Liens* § 60 (1970) (when liened property is wrongfully converted, lien attaches to proceeds). This element is present here as well, in that Peterson Mortgage attempted to defeat Butterfield's judicial foreclosure of its mechanics' lien by instituting the speedier nonjudicial trust deed foreclosure and then causing the property to be sold to Wright–Clark, who was shielded from the lien. Additionally, we presume that the materials provided by Butterfield enhanced the property's value and thus the price paid by Wright–Clark. As a result, Peterson Mortgage received a benefit from its sale of those materials, as part of the property, to Wright–Clark.

 Therefore, we hold that under section 38–1–3, where the holder of a valid mechanics' lien has timely begun judicial lien foreclosure proceedings, and a party holding a property interest that is subject to the lien, aware of the pending foreclosure, disposes of the property to one who takes it free of the lien, the lien attaches to the proceeds gained from the sale. Accordingly, the trial court's summary judgment, attaching Butterfield's lien to the proceeds of the property's sale to Wright–Clark, was properly granted.[1]

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

BILLINGS and JACKSON, JJ., concur.

---

1. We note that, technically speaking, the judgment should perhaps have been entered against Leon Peterson, the last person to actually hold the property subject to the lien. Leon Peterson was not named as a party to Butterfield's lien foreclosure. However, because Leon Peterson was president of Peterson Mortgage at the time of the transactions in question, we agree with Butterfield that he essentially stepped into Peterson Mortgage's shoes with respect to the lien. Additionally, because Leon Peterson was not known to hold an interest in the property at the time Butterfield began its lien foreclosure action, it would appear that the burden would properly fall upon Peterson Mortgage to join Leon Peterson in the foreclosure action, and that, failing to do so, liability for the lien rests with Peterson Mortgage. Finally, Peterson Mortgage has not argued this point at trial nor on appeal.