2012 UT 89

**VCS, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**La Salle Development, LLC, a limited liability company; America West Bank, a Utah limited liability company; UTAH COMMUNITY BANK, a Utah corporation; and Does 1–10, Defendants and Appellee.**

No. 20110062.

Supreme Court of Utah.

Dec. 11, 2012.

---

David B. Stevenson, Ogden, for appellant.

Ronald G. Russell and Mathew J. Ball, Salt Lake City, for appellee.

Justice LEE, opinion of the Court:

¶ 1 VCS, Inc. claims it acquired a valid mechanic's lien on an Ogden subdivision by performing work as a general contractor. Utah Community Bank (UCB) claims an interest in the same Ogden subdivision, an interest it acquired by extending a construction loan—secured by a deed of trust—to the subdivision's owner.

¶ 2 This case involves a dispute over the validity of VCS's mechanic's lien as against UCB. VCS brought suit against UCB to vindicate VCS's allegedly superior interest in the subdivision property. UCB responded by asserting that VCS's mechanic's lien was not valid as against UCB's interest in the property because VCS had failed to record a timely *lis pendens*, as required under our mechanic's lien statutes. VCS claimed that its lien was valid as against UCB despite VCS's failure to record a timely *lis pendens*. VCS further claimed that even if its lien was invalid, it was entitled to equitable relief under the doctrine of unjust enrichment because UCB had acquired ownership of a number of the subdivision lots pursuant to a trustee's sale on its deed of trust.

¶ 3 VCS and UCB filed cross-motions for summary judgment. The district court denied VCS's motion and granted UCB's, concluding that (a) VCS's mechanic's lien was void and unenforceable as against UCB because VCS had failed to record a timely *lis pendens*, (b) VCS was not entitled to unjust enrichment relief, and (c) UCB was entitled to recover attorney fees. VCS appealed.

¶ 4 We affirm. VCS's failure to record a timely *lis pendens* rendered its mechanic's lien void and unenforceable as against UCB. And because VCS failed to appropriately exhaust its legal remedies, VCS is not entitled to equitable relief under the doctrine of unjust enrichment. Consequently, we also affirm the district court's award of attorney fees to UCB under Utah Code section 38–1–18 and likewise conclude that UCB is entitled to its reasonable attorney fees incurred on appeal (in an amount to be determined on remand).

I

¶ 5 Appellant VCS, Inc. was hired by La Salle Development, LLC in 2006 as the general contractor for the Northpark Meadows residential subdivision in Ogden, Utah. Although VCS and La Salle did not enter into a formal agreement until February 22, 2007, VCS began working on Northpark Meadows during the first week of November 2006.

¶ 6 Appellee Utah Community Bank (UCB) acquired its initial interest in Northpark Meadows soon thereafter when it extended a construction loan to La Salle, secured by a deed of trust. The deed of trust was dated January 9, 2007 and recorded January 12, 2007.

¶ 7 After VCS began working on Northpark Meadows, VCS took several steps designed to perfect its mechanic's lien. First, VCS filed a Notice of Commencement with the State Construction Registry on April 17, 2007. Later, after VCS was terminated by La Salle in September 2007,[1] VCS also recorded a Notice of Mechanic's Lien on January 29, 2008.

¶ 8 VCS attempted to inform La Salle (but not UCB) that it had recorded this Notice of Mechanic's Lien. VCS also brought suit against La Salle (but not UCB), on March 12, 2008, but it did not record a *lis pendens* until April 24, 2009. This was 452 days after it first recorded its notice of mechanic's lien. VCS obtained a default judgment against La

---

1. In April 2007, VCS and UCB entered into a written agreement providing that VCS would continue to act as the general contractor for the Northpark Meadows project even if La Salle failed to fulfill its obligations. VCS never performed under this agreement because VCS was terminated in September 2007. VCS nevertheless claims that this agreement is relevant to its claim of unjust enrichment.

Salle on June 6, 2008. VCS filed a notice of judgment lien with the county recorder on September 24, 2008. VCS informed UCB of this judgment lien in a letter written on October 16, 2008, a letter in which VCS asked UCB to stipulate that VCS's lien had priority over any claimed UCB interest in Northpark Meadows.[2]

¶9 On January 26, 2009, La Salle filed a motion to set aside the default judgment that had been entered against it.[3] Thereafter, on April 21, 2009, VCS amended its complaint to add claims against UCB (including claims for mechanic's lien foreclosure, declaratory judgment [relating to lien priority], and unjust enrichment).[4] Just a few days after VCS amended its complaint, on April 27, 2009, the district court set aside VCS's default judgment against La Salle, concluding that service on La Salle's registered against had been deficient. Then, in December 2009, UCB became the owner of a number of Northpark Meadows lots pursuant to a trustee's sale on its deed of trust.

¶10 VCS moved for summary judgment against UCB in April 2010, alleging that VCS had a mechanic's lien that was valid against UCB—such that the trustee's sale in favor of UCB should be set aside. Alternatively, VCS asserted that it was entitled to compensation because it had unjustly enriched UCB.[5] UCB filed a cross-motion for summary judgment, seeking a determination that VCS's mechanic's lien was void and unenforceable as against UCB, a determination that VCS's unjust enrichment claim was barred by its failure to exhaust its legal remedies, and an award of attorney fees under Utah Code section 38-1-18 (2010). The district court denied VCS's motion for summary judgment and granted UCB's cross-motion. VCS appealed.

II

¶11 VCS asserts four grounds for challenging the district court's decision granting summary judgment for UCB: (1) VCS was not required by the mechanic's lien statute to record a *lis pendens* within 180 days of the Notice of Mechanic's Lien because UCB was eventually made a party to VCS's lien foreclosure suit; (2) VCS's suit against La Salle satisfied any statutory requirement for VCS to make UCB a party to the lien foreclosure action within 180 days; (3) VCS satisfied the substantial compliance provision of the statute; and (4) VCS is entitled to equitable relief under the doctrine of unjust enrichment.[6]

¶12 We find no merit in any of these grounds. We accordingly affirm, under the de novo standard of review for summary judgment. *See L.C. Canyon Partners, L.L.C. v. Salt Lake Cnty.*, 2011 UT 63, ¶8, 266 P.3d 797.

A

¶13 VCS's first argument rests on its proposed construction of Utah Code section

2. UCB asserts, and VCS concedes, that this letter was the earliest evidence before the district court indicating that UCB had actual knowledge of the commencement of VCS's action against La Salle.

3. This motion was based on La Salle's assertion that it had not been properly served with process. La Salle's registered agent was a CPA who had no other affiliation with La Salle. Process was served by leaving a copy of the summons and complaint with his receptionist. The CPA allegedly never received the summons and complaint. La Salle did not receive them.

4. This amended complaint also included claims against American West Bank. Subsequently, the Federal Deposit Insurance Corporation (FDIC) became the receiver for American West Bank, and thus the real party in interest in this proceeding. The FDIC is not a party to this appeal, however, because VCS subsequently moved to dismiss its appeal against the FDIC with prejudice. We granted that motion in an order dated August 17, 2011. Thus, for purposes of appeal, the relevant dispute is between UCB and VCS only.

5. UCB also moved for summary judgment against La Salle. But La Salle did not respond. Given that we ultimately find UCB's interest in Northpark Meadows to be superior to VCS's, we need not determine whether VCS's interest in the property is paramount to La Salle's.

6. UCB also argues that we should reinstate the district court's original default judgment against La Salle because La Salle was properly served with process. We do not reach this argument, however, because we conclude that VCS's mechanic's lien is not valid as against UCB—a decision that moots any question of VCS's lien priority in relation to other third parties.

38–1–11(3)(a) (2010).[7] This section provides, in relevant part:

> Within the time period provided for filing [a foreclosure action set forth] in Subsection (2) [i.e. within 180 days after the day on which the lien claimant files its Notice of Mechanic's Lien] the lien claimant shall file for record with the county recorder of each county in which the lien is recorded a notice of the pendency of the [foreclosure] action, in the manner provided in actions affecting the title or right to possession of real property, or the lien shall be void, except as to persons who have been made parties to the action and persons having actual knowledge of the commencement of the action.

UTAH CODE § 38–1–11(3)(a).

¶ 14 VCS characterizes this provision as consisting of a general rule and two exceptions. The general rule is that a *lis pendens* must be recorded within the 180–day window afforded for filing a mechanic's lien foreclosure action (i.e., within 180 days of the filing of the Notice of Mechanic's Lien). The exceptions apply where a person either (a) is made a party to the foreclosure action, or (b) has actual knowledge of the commencement of that action. VCS's position rests on the notion that the 180–day time period applies to the general rule and not to the exceptions. Because UCB was eventually made a party to this action (though not within the 180–day period), VCS insists that it escapes the implications of the general timing rule under the first statutory exception.

¶ 15 We do not read the statute as VCS does. Section 11(3) does prescribe exceptions to a general rule. But those exceptions are not unattached to or outside the timeframe established by the general rule. Rather, the exceptions are subject to the 180–day time period. To be invoked, the conditions set forth in the exception must be satisfied within 180 days of the filing of the Notice of Mechanic's Lien.

¶ 16 The statutory text does not explicitly make the exceptions subject to the 180–day time period. Read in isolation, the condi-tions implicating the statutory exceptions could be read without reference to the 180–day timeframe. We reject that reading, however, for a number of reasons.

¶ 17 First, the text of the exception provisos does make express reference to *some* timeframe: They are implicated with respect to persons "who *have been made* parties to the action" and to persons "*having* actual knowledge" of the action. *Id.* (emphasis added). That formulation necessarily requires an answer to a timing question that is not expressly answered in the text—which is *when* a person must have been made a party and *when* a person must have actual knowledge. And given that the statute clearly implicates *some* timeframe, the most natural reading of the exceptions is that they incorporate the *only* timeframe set forth in the statute—which is the 180–day timeframe for both filing the foreclosure action and recording the *lis pendens*.

¶ 18 Second, VCS's contrary view—that the timeframe for joinder of a party to the action or for knowledge of commencement of the action is unlimited—would effectively nullify the 180–day requirement set forth in the general rule. If we endorsed VCS's construction, a lien holder who failed to record a *lis pendens* within 180 days could routinely excuse its noncompliance by adding a party to a foreclosure action later on, or by simply informing such a person about the commencement of the suit. Such a result would allow the exceptions to swallow the 180–day requirement, and that outcome runs afoul of the settled canon of preserving independent meaning for all statutory provisions. *See Labelle v. McKay Dee Hosp. Ctr.*, 2004 UT 15, ¶ 16, 89 P.3d 113. VCS's approach also ignores the contextual implications of the 180–day period during which a *lis pendens* must be recorded. In addition to declaring that a mechanic's "lien shall [generally] be void" against all nonparties to the foreclosure suit where no *lis pendens* is recorded during this period, *see* UTAH CODE § 38–1–11(3)(a), the statute further provides that "a lien under this chapter is *automatically and imme-*

---

7. Unless otherwise noted, all textual references to section 38–1–11 in this opinion refer to the version in place in 2010.

*diately void* if an action to enforce the lien is not filed within [the same 180–day period]," *see id.* § 38–1–11(4)(a) (emphasis added). Together, these sections establish a regime in which the validity of any mechanic's lien claim can be determined by examining only those events that occur during a finite period of time (the 180–day period following the filing of a Notice of Mechanic's Lien).

¶ 19 Under VCS's contrary view there would be no such period of time, and so there would be no way to definitively determine whether a particular mechanic's lien claim was viable. The indeterminacy created by VCS's construction is incompatible with the certainty generated by the statute's multiple, sharp-cornered rules invalidating mechanic's lien claims because of failures to take actions that are statutorily required during the 180–day period following the filing of a Notice of Mechanic's Lien. We accordingly reject VCS's approach and interpret the exceptions in section 11(3)(a) to be subject to the 180–day timeframe in the general rule.

¶ 20 VCS protests that this construction fails to advance the *purpose* of the mechanic's lien statute, which in its view is to protect the interests of contractors performing labor on property. But that portrayal of the mechanic's lien statute's purpose is a vast over-simplification. Like most legislation, our mechanic's lien statute is not "aimed at advancing a single objective at the expense of all others," but instead is "a result of a legislative give-and-take that balances multiple concerns." *Myers v. Myers*, 2011 UT 65, ¶ 27, 266 P.3d 806. Thus, our mechanic's lien statutes are aimed not only at fortifying the claim-filing system for contractors, but also at assuring clear notice for property owners and facilitating finality in a field—real estate transactions—where that policy is paramount.[8]

¶ 21 In any event, VCS's argument misperceives the judicial function in a field occupied by statute. In common law fields unencumbered by statute, the court performs a primary policymaking role. We balance competing social policies to arrive at the "best" common law rule as we perceive it.[9]

¶ 22 That role changes markedly when the legislature displaces our residual common-law authority with duly-enacted legislation. In that circumstance, we are no longer tasked with advancing public policy as we see it. We instead must implement the particular balance of policies reflected in the terms of a statute.[10] Those terms are the law—even when we might find that the policies behind the statute should properly have dictated a different rule. *See Alliant Techsystems, Inc. v. Salt Lake Cnty. Bd. of Equalization*, 2012 UT 4, ¶ 21, 270 P.3d 441 (noting that the purpose of a statute plays a role in statutory interpretation only where "the language of a statute is ambiguous").

¶ 23 Thus, we could not properly accept VCS's invitation to vindicate the purpose of the mechanic's lien statute as VCS sees it even if we accepted that purpose at face value. Where the language of the statute is clear, that language controls and cannot be overridden by a presumed statutory

**8.** *See Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990) (observing that one purpose of the mechanic's lien statutes is to "provide protection to laborers and materialmen," but that there is also a "competing interest[ ]" based on the "recogni[tion] that liens create an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit" and explaining that "[s]tate legislatures and courts attempt to balance these competing interests through their mechanic's lien statutes and judicial interpretations thereof" (internal quotation marks omitted)); *Am. Estate Mgmt. Corp. v. Int'l Inv. & Dev. Corp.*, 1999 UT App 232, ¶ 10, 986 P.2d 765 ("When, as in this case, title to real property is at issue, the need for finality is at its apex.").

**9.** *See, e.g., Johnson v. Rogers*, 763 P.2d 771, 773 (Utah 1988) (explaining how the court had estab-lished an "actual malice" standard applicable to "shoplifting cases" involving the common-law tort of false imprisonment based upon "extensive consideration of specific policy concerns" and "balanc[ing of] . . . competing interests").

**10.** *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶¶ 11–12, 274 P.3d 981 (rejecting the suggestion that the court should "wield[ ] policymaking authority like that which we exercise in common law fields" after concluding that the field involved was one that was "comprehensively regulated by statute," such that the court's role was to "advance the public policies enshrined in Utah statutes, not to advance others that we might find controlling if we had a policymaking role in the . . . field").

purpose. *See id.; Kimball Condo. Owners Ass'n v. Cnty. Bd. of Equalization,* 943 P.2d 642, 648 (Utah 1997) (explaining that "we look *first* to the plain meaning of the words" in interpreting statutes (emphasis added)). Our understanding of purpose, in other words, can be employed to inform and resolve ambiguities in the text; it cannot be used to establish an ambiguity that does not exist, or to override the meaning of a statute that is otherwise plain. *See LPI Servs. v. McGee,* 2009 UT 41, ¶ 11, 215 P.3d 135 ("When the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed."). Because we find the statute here to plainly foreclose VCS's interpretation of it, we therefore reject its request that we override the statute's terms in the interest of advancing its purported purpose.

B

¶ 24 VCS next asserts that it perfected its lien vis-à-vis UCB by filing suit *against La Salle* within 180 days of filing its Notice of Mechanic's Lien. Specifically, although VCS failed to join UCB in its foreclosure action within 180 days, it nonetheless seeks to excuse that failure on the grounds that: (1) its amended complaint adding UCB should "relate back" to the date of its original complaint under rule 15(c) of the Utah Rules of Civil Procedure; and/or (2) its claim against UCB was somehow preserved by bringing a timely foreclosure action against La Salle, under the rationale of *Butterfield Lumber, Inc. v. Peterson Mortgage Corp.,* 815 P.2d 1330 (Utah Ct.App.1991). We disagree on both counts.

1

¶ 25 The "relation back" doctrine in rule 15(c) does not excuse VCS's failure to record a *lis pendens* because the doctrine's requirements are not satisfied. This doctrine invokes a constructive timing fiction with respect to certain amended pleadings. For amended claims arising out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," the amended pleading "relates back to the date of the original pleading." UTAH R. CIV. P. 15(c). The relation back rule, moreover, has been interpreted to extend not just to the parties to the original pleading but also to those who share an "identity of interest" with them.[11]

¶ 26 VCS asserts that its late-filed complaint against UCB should be treated as though it had been filed on the same date as the original complaint against La Salle. It fails to establish, however, that La Salle and UCB share an "identity of interest," and thus the relation back doctrine cannot excuse its failure to join UCB within the timeframe required by statute.

¶ 27 That conclusion is sustained by our decision in *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214 (Utah 1984). There we explained that an "identity of interest" exists where "the parties are so closely related in their business operations that notice of the action against one serves to provide notice of the action to the other." *Id.* at 217 (internal quotation marks omitted). We also noted that such an identity of interest exists "between past and present forms of the same enterprise." *Id.* We contrasted this type of relationship with one based on mere "privity of contract," in concluding that the original "defendant, and the third-party defendants," who shared nothing more than a contractual relationship, did not share an identity of interest. *Id.; see also Russell v. Standard Corp.,* 898 P.2d 263, 265 (Utah 1995) (explaining that "privity of contract alone is an insufficient identity of interest for relation back under rule 15(c)").

¶ 28 *Perry* also explained why a contractual relationship was insufficient to create an identity of interest: "If any third-party action automatically related back to the date of filing of the original complaint, Rule 15(c) would become an all-encompassing rule that would eliminate all limitations on third-party actions." *See Perry,* 681 P.2d at 217.

---

11.  *See Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 217 (Utah 1984) (explaining that the "relation back" doctrine applies to an amendment adding a new party only if that new party shares an identity of interest with existing parties to the suit).

¶ 29 Our precedent accordingly forecloses VCS's assertion that UCB and La Salle shared an identity of interest based on their contractual relationship. Relation back on that basis, moreover, would effectively nullify the mandatory 180–day *lis pendens* filing requirement. A property owner defendant in a mechanic's lien foreclosure action (here, La Salle) and a third-party lender with an interest in that owner's property (here, UCB) will almost *always* enjoy a contractual relationship. After all, it is through such a contractual relationship that the third-party lender obtains an interest in the owner's property. Thus, VCS's approach, if accepted, would mean that a *lis pendens* would almost never be required. That is another reason to be skeptical of VCS's view, which we reject and therefore hold that VCS's joinder of UCB does not relate back to the date of the complaint filed against La Salle.

2

¶ 30 *Butterfield Lumber* likewise provides no support for VCS's position. Assuming without deciding the propriety of the decision, that case does not help VCS.

¶ 31 In *Butterfield,* a mechanic's lien claimant (Butterfield) made a third-party lender (Peterson Mortgage) a party to its lien foreclosure action but failed to record a timely *lis pendens.* 815 P.2d at 1331–32. Thereafter, Peterson Mortgage sold its interest in the relevant property to an innocent purchaser who lacked notice of the foreclosure action. *Id.* at 1332. VCS asserts that "[t]he court found that the Butterfield lien was enforceable against the third party purchaser because *it had obtained the property from Peterson,* who had timely actual knowledge of the lien action and was a party added before the deadline." VCS asserts that *Butterfield* aids its position because "[t]he facts are the same here. Utah Community Bank obtained its interest in the property from La Salle, who had timely actual knowledge of the lien action and who was made a party within the

180 day period." We disagree. *Butterfield* does not turn on the premise that the mechanic's lien in that case followed the property to the third-party purchaser. Instead, *Butterfield* held that the mechanic's lien attached to the *proceeds* of this sale. *See id.* at 1335. In other words, the lien attached to the money received by Peterson Mortgage, an actual party to Butterfield's timely lien foreclosure action. *See id.* In fact, the *Butterfield* court expressly noted that "the parties agree that because no lis pendens was ever filed ... Butterfield's mechanics' lien was void as against [the ultimate purchaser of the property]." *Id.* at 1333.

¶ 32 Thus, *Butterfield* provides no help to VCS because it did not hold that a mechanic's lien action filed against one party would "stick" to all property held by that party and remain affixed even after that property was transferred to a third party.[12] Thus, even assuming it could be said that UCB received its interest in Northpark Meadows from La Salle,[13] *Butterfield* would still not sustain the validity of VCS's lien as against UCB.

¶ 33 VCS's invocation of *Butterfield* rests on an unstated—but incorrect—premise: that UCB was a constructive party to (or had constructive notice of) VCS's foreclosure suit against La Salle, thus satisfying one of the exceptions to the *lis pendens* requirement under section 38–1–11(3)(a). But section 38–1–11(3)(a) unequivocally provides that a *lis pendens must be recorded* or the "lien *shall be void, except* as to *persons who have been made parties to the action* and *persons having actual knowledge of the commencement of the action.*" UTAH CODE § 38–1–11(3)(a) (emphases added). And the statute leaves no room for constructive addition of parties to the action or for attaching a mechanic's lien to a transferred piece of property on the basis of constructive knowledge. Instead, it adopts a bright-line rule that invalidates such liens if no timely *lis pendens* is recorded, unless a party is either added to a foreclo-

---

**12.** Having concluded that *Butterfield* does not help VCS, we need not reach its speculative contention that *Interlake Distributors, Inc. v. Old Mill Towne,* 954 P.2d 1295 (Utah Ct.App.1998), "would have reached the opposite result" if it had been decided after *Butterfield.*

**13.** This is not undisputed. UCB asserts that "UCB actually obtained fee title to [Northpark Meadows] from the successor trustee under its deed of trust by purchasing the Property at a trustee's sale. In no sense did UCB obtain ownership from La Salle."

sure suit or receives actual notice of it within the 180–day statutory period. So the assertion that UCB was a constructive party to VCS's La Salle foreclosure action (or had constructive knowledge of it) simply because UCB later became the owner of Northpark Meadows by foreclosing on its La Salle trust deed is incompatible with the statute.

¶ 34 VCS's reading would undermine the importance of the *lis pendens* recording requirement. Third party lenders would *never* be able to take property free of a mechanic's lien claim where a mechanic's lien foreclosure action against the property owner was pending, even though no *lis pendens* had been recorded and these lenders had not been made parties to the action and had no knowledge of it. After all, it could always be said that these lenders—by foreclosing on their deeds of trust—acquired their interest "through" the original property owner (who was a party to the original mechanic's lien foreclosure suit). This result is incompatible with the statute's central focus on the requirement of a *lis pendens*. There is no room for these types of "constructive party" or "constructive notice" doctrines under section 38–1–11(3)(a).

C

¶ 35 VCS next seeks to sustain its untimely *lis pendens* under the "substantial compliance" standard in section 38–1–7(2)(b) of the statute. UTAH CODE § 38–1–7(2)(b) (2010) ("Substantial compliance with the requirements of this chapter is sufficient to hold and claim a lien."). Though the recording may have been untimely, VCS views that defect as insignificant. And it highlights the other actions it took to comply with the requirements of the statute, concluding that the failure to record a timely *lis pendens* is a mere technicality and that its compliance was otherwise "substantial."

¶ 36 We do not see it that way. Compliance with a few—or even many—provisions of a detailed statutory scheme is not the measure of substantial compliance. And just because a statute is detailed does not automatically transform its individual requirements into immaterial technicalities. Rather, this court has adopted a rather strict notion

of substantial compliance. Our cases refuse to condone the failure to comply with an "express command of the statute," *Eccles Lumber Co. v. Martin,* 31 Utah 241, 87 P. 713, 716 (1906), at least in circumstances where the act of noncompliance is material rather than harmless, *see id.* at 716–17; *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.,* 798 P.2d 738, 745–46 (Utah 1990).

¶ 37 Thus, the substantiality of a person's compliance is measured by its potential for harm or prejudice. A defect in compliance may be excused as insubstantial if it cannot have any meaningful impact on other parties. *See Grazer v. Jones,* 2012 UT 58, ¶¶ 17–20, 289 P.3d 437 (interpreting "substantial compliance" standard in cases interpreting the redemption requirements of UTAH R. CIV. P. 69C(c) to incorporate a standard of materiality or harmlessness, such that "when a redemption has been upheld despite a failure to fulfill a requirement in the rule, it has been on grounds of harmlessness—that the purchaser could not have been affected by the redemptioner's noncompliance").

¶ 38 Our decision in *Projects Unlimited* is consistent with this standard of substantiality. There we excused a party's noncompliance with technical elements of the mechanic's lien statute's requirement that a "notice of intention to hold and claim a lien" be "verified by the oath … of some … person." *Projects Unlimited,* 798 P.2d at 745 (internal quotation marks omitted). The deficiency in *Projects Unlimited* was in an improper verification, in that the "notary failed to affix a proper jurat" because she "omitted her address and the expiration date of her commission." *Id.* at 745–46 (internal quotation marks omitted). We deemed this failure insubstantial not only because it was not clearly required by the mechanic's lien statute, but also because there was no arguable prejudice, given that the parties "d[id] not contest that an oath was made or that it was signed before a notary." *Id.* at 745. In these circumstances, the omission of the address and expiration date was harmless. Because the "purpose of the verification requirement" was "to assure that lien claimants

file legitimate claims," that purpose was satisfied and any deficiency was harmless in light of the concession that the lien claim was made under oath before a notary. *Id.* at 746.[14]

¶ 39 VCS's compliance was not "substantial." The *lis pendens* requirement is an express statutory command, and one clearly implicating a potential for prejudice or harm. A *lis pendens* puts the world on notice that an action has been commenced to foreclose a mechanic's lien claim. This filing requirement thereby promotes clear notice, finality, and the alienability of real property. *Cf. First Sec. Mortg. Co. v. Hansen,* 631 P.2d 919, 921–22 (Utah 1981) (explaining the importance of compliance with the express provisions of the mechanic's lien statute, because liens on property limit the property's alienability). VCS fails to point to any action it took that adequately fulfilled this function of the *lis pendens* requirement.[15] In these circumstances, we cannot conclude that the failure to comply with the statute was harmless, and thus decline to find substantial compliance.

D

¶ 40 VCS's final bid to excuse its failure to record a *lis pendens* is its invocation of the equitable doctrine of unjust enrichment. This claim rests on the assertion that UCB was unjustly enriched by the value of the work VCS performed on Northpark Meadows.

¶ 41 We reject this claim on exhaustion grounds. A party invoking equity is generally required to first "exhaust any legal remedies available."[16] This is because equitable remedies are secondary gap-fillers. They are aimed at deficiencies left after exhaustion of primary legal claims.

¶ 42 In the mechanic's lien context, the legal remedies that must be pursued to unlock equitable claims like unjust enrichment include those available under our mechanic's lien statutes.[17] Here, VCS had an adequate legal remedy under our mechanic's lien statutes (available only through the recording of a timely *lis pendens* ) that it failed to pursue

14. *See also Chase v. Dawson,* 117 Utah 295, 215 P.2d 390, 390–91 (1950) (sustaining a mechanic's lien where the "notice of lien [was] no model," but where the notice still fulfilled the purpose of the notice requirement because "the instrument ... clearly shows that building materials were furnished to the owner, the first named defendant, and used on and about the house on said land, which land is fully and legally described by lot and subdivision" (internal quotation marks omitted)).

15. VCS claims that it gave "UCB actual notice of the pendency of its lien foreclosure action, and named Defendant UCB as a party to the action" at a time that was "[w]ell in advance of ... UCB's acquisition of an interest in the property." But UCB acquired its initial interest in the property at the time it recorded its deed of trust, in January 2007, so VCS's assertion that UCB could not have been prejudiced by its failure to record a timely *lis pendens* because UCB did not yet have an interest in the property is factually incorrect. *See Capital Assets Fin. Servs. v. Maxwell,* 2000 UT 9, ¶ 12, 994 P.2d 201 (explaining that "a trust deed is intended to convey some kind of title to real property" and that "the point of the deed is to allow the sale of the property upon default to satisfy the underlying obligation").

16. *See Commercial Fixtures & Furnishings, Inc. v. Adams,* 564 P.2d 773, 774 (Utah 1977); *Knight v. Post,* 748 P.2d 1097, 1099 (Utah Ct.App.1988)

("As a general rule, one must first exhaust his legal remedies before he may recover on the basis of the equitable doctrine of *quantum meruit.*"); *see also Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.,* 930 P.2d 1182, 1193 (Utah 1996) (explaining that the "doctrine [of unjust enrichment] is designed to provide an equitable remedy where one does not exist at law" such that "if a legal remedy is available ... the law will not imply the equitable remedy of unjust enrichment"), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 55, 221 P.3d 234.

17. *See Commercial Fixtures & Furnishings, Inc.,* 564 P.2d at 773–74 (noting that a plaintiff had not availed himself of the remedy the mechanic's lien statute afforded him, and concluding that he was therefore not entitled to an equitable remedy); *see also Knight,* 748 P.2d at 1100 (denying an equitable remedy in a circumstance where a plaintiff seeking unjust enrichment relief had failed to perfect its mechanic's lien); *Season Comfort Corp. v. Ben A. Borenstein Co.,* 281 Ill. App.3d 648, 211 Ill.Dec. 682, 655 N.E.2d 1065, 1071 (1995) ("It is axiomatic that an unjust enrichment claim is viable only when there is no adequate remedy at law.... [A] party cannot ignore or fail to comply with the remedies available to it under the [mechanic's lien statute] and then gain redress by claiming that it is the victim of the other party's unjust enrichment.").

as against UCB. Its unjust enrichment claim is accordingly barred by its failure to exhaust its legal remedies.

¶ 43 Application of the exhaustion requirement here serves an important purpose. The requirement ensures that the calibrated policies balanced in our legal rules are not upended. This rationale is important even where the source of legal doctrine is the common law. Its importance is further heightened where a statute is involved.

¶ 44 Opening the door to unjust enrichment relief for VCS would give it nearly the same remedy as the one it would have been entitled to if it had complied with the mechanic's lien statute. But because VCS did not properly comply with this statute, affording such a remedy here would threaten the balance struck by our legislature in weighing the competing policies at stake in mechanic's lien cases. *Supra* ¶ 20. That threat is particularly problematic in the statutory realm given the legislature's policymaking prerogative and direct accountability to the people. We are in no position to second-guess the judgment it reached in enacting the mechanic's lien statute, and thus affirm on the ground that VCS is not entitled to unjust enrichment relief.

### III

¶ 45 For the above reasons, we affirm the district court's grant of summary judgment in UCB's favor, including its award of attorney fees to UCB under Utah Code section 38-1-18 (2010). Because we also conclude that UCB is entitled to its attorney fees reasonably incurred on appeal, we remand to the district court for a determination of this amount.

Justice LEE authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice PARRISH, and Judge ORME joined.

Having recused herself, Justice DURHAM does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.