2020 UT App 167

# THE UTAH COURT OF APPEALS

ZION VILLAGE RESORT LLC,
Appellee,
*v.*
PRO CURB U.S.A. LLC AND PACIFIC COAST SUPPLY LLC,
Appellants.

Opinion
Nos. 20190736-CA and 20190831-CA
Filed December 17, 2020

Fifth District Court, St. George Department
The Honorable Eric A. Ludlow
No. 190500078

David W. Hunter, Nathan K. Fisher, and William A.
Allen, Attorneys for Appellant Pro Curb U.S.A. LLC

Bryan H. Booth, Attorney for Appellant
Pacific Coast Supply LLC

Matthew D. Ekins and Dayton L. Hall,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

HARRIS, Judge:

¶1 Two contractors who performed work on a condominium development filed construction liens against the property, alleging that they had not been fully paid for their work. The owner of the development—Zion Village Resort LLC (Zion Village)—filed petitions to nullify the liens, and the district court granted those petitions, concluding that the contractors had failed to file proper preliminary notices regarding their liens. The contractors each filed separate appeals, which we consider together in this opinion. With regard to the appeal filed by Pro

Curb U.S.A. LLC dba Pro Landscape U.S.A. (Pro Landscape), we reverse on all issues, including attorney fees, and remand for entry of judgment and computation of an award of attorney fees in favor of Pro Landscape. With regard to the appeal filed by Pacific Coast Supply LLC (Pacific Coast), we dismiss part of that appeal and affirm the district court's order nullifying Pacific Coast's construction liens. We also affirm the district court's determination that Zion Village is entitled to recover attorney fees and costs from Pacific Coast, but we reverse one minor aspect of the court's attorney fee award to Zion Village, and remand for an adjustment of that award.

## BACKGROUND

¶2     Both Pro Landscape and Pacific Coast were hired to work on the construction of a condominium development known as Zion Village Resort and Townhomes (the Development). As envisioned, upon completion, the Development is to include twenty-three multi-unit residential buildings as well as a community clubhouse and pool area. At issue here are three of those buildings: Building 5, Building 6, and Building 7. Each building contains four separate units, each of which is referred to as a "lot" and identified by its own specific parcel number.[1] Both Pro Landscape and Pacific Coast were contracted to work on, and did work on, the construction of Buildings 5, 6, and 7, as well as the clubhouse and pool area. At the time these contractors were hired and performed at least some of their work, the real property in question was owned by Zion Village.

---

1. Building 5 contains Lots 17 through 20; Building 6 contains Lots 21 through 24; and Building 7 contains Lots 25 through 28. Each lot is assigned a parcel number; for instance, Lot 17 is assigned parcel number H-ZIVT-1-17; Lot 18 is assigned parcel number H-ZIVT-1-18, and so on.

*Preliminary Notices*

¶3　Under Utah law, any "person who desires to claim a construction lien on real property" must file a "preliminary notice . . . no later than 20 days after" the person starts working on the property. *See* Utah Code Ann. § 38-1a-501(1)(a) (LexisNexis 2018). As discussed more fully below, a preliminary notice must include certain information, including the "name, address, telephone number, and email address of the person providing the construction work," as well as one of four listed means of identifying the specific piece of real property to which the eventual lien will attach. *See id.* § 38-1a-501(1)(h)(i), (vii). Both Pro Landscape and Pacific Coast filed certain preliminary notices within twenty days of starting their work.

¶4　Pro Landscape's four preliminary notices listed the correct parcel numbers for the four lots contained within Building 5. Under the line "Person Furnishing Labor, Service, Equipment, or Material," the notices listed "Chad Hansen," and provided an address, email address, and telephone number. Under the line provided for "comments," the notices stated that the "services [were] provided by Pro Curb USA LLC DBA Pro Landscape USA."

¶5　Pacific Coast's four preliminary notices identified "Pacific Supply"[2] as the entity performing the work, and listed an address, email address, and telephone number as required. The notices attempted to identify, by parcel number, the property to which they attached: two of the notices listed "H-ZIVT-1" as the relevant property, which is an incomplete parcel designation not

---

2. The full business name of Pacific Coast is Pacific Coast Supply, LLC, and the record indicates that, for business purposes, it sometimes refers to itself as Pacific Supply, but it has referred to itself in the pleadings and briefings as Pacific Coast.

referring to any particular lot; one of the notices referred only to Lot 18 contained within Building 5; and the fourth notice listed Lots 5 through 8, which are contained within Building 2, and unconnected to Buildings 5, 6, or 7.

*Construction Liens*

¶6 After performing work on the Development, both Pro Landscape and Pacific Coast believed that they had not been paid in full. In keeping with this belief, both recorded construction liens against various parts of the Development. As relevant here, in November 2018, Pro Landscape recorded four liens,[3] one against each lot in Building 5, and therein indicated that it sought to recover $119,668.00 ($29,917.00 against each lot contained within Building 5). In November and December 2018, Pacific Coast recorded three liens, none of which were recorded against the properties referred to in its preliminary notices. Specifically, Pacific Coast's liens were filed against parcel number "H-ZIVT-1-CLUBHOUSE AND POOL AREA," and against all lots contained within Buildings 6 and 7; those liens stated that Pacific Coast sought to recover $68,907.89 ($11,331.29 against the clubhouse and pool area, $38,095.12 against Building 6, and $19,481.48 against Building 7).

¶7 In the meantime, Zion Village appears to have sold seven of the eight lots in Buildings 5 and 6 on various dates on or before January 23, 2019, and it sold the eighth lot in March 2019. At some point prior to October 2019, ownership of the Development's common areas—including the clubhouse and

---

3. Pro Landscape also recorded construction liens against Buildings 6 and 7, but later released those liens voluntarily some two months prior to Zion Village's filing the petition to nullify. Consequently, only Pro Landscape's four liens pertaining to Building 5 are relevant to our analysis here.

pool area—was transferred to the Development's homeowner associations. Zion Village asserts, however, that at some point it acquired assignments, from the new owners of some of the lots at issue, of any legal claims and defenses related to the construction liens at issue here.

*Zion Village's Petition to Nullify*

¶8    In early February 2019, and as amended in April 2019, Zion Village filed a petition to nullify the construction liens that had been recorded by both Pro Landscape (against Building 5) and Pacific Coast (against Buildings 6 and 7, and against the clubhouse and pool area). *See* Utah Code Ann. § 38-1a-805(1) (LexisNexis 2018) (allowing "[a]n owner of an interest in a project property" to "petition the district court . . . for summary relief to nullify" a construction lien). In its petition, Zion Village alleged that it was the owner of all of the real property in question. Zion Village asserted that the construction liens recorded by Pro Landscape and Pacific Coast were invalid because neither contractor had filed valid preliminary notices as required by statute.[4] In its petition, Zion Village requested an "expedited hearing," pursuant to section 38-1a-805(4)(b) of the Utah Code, "to determine whether the liens [were] invalid."

¶9    Just a few days after the petition was filed, the district court held an expedited hearing. At the conclusion of the hearing, the court took the matter under advisement, and later issued a written ruling nullifying all four of Pro Landscape's liens on the ground that Pro Landscape had not filed any

---

4. Zion Village also advanced a second claim that the liens were "wrongful liens" as that term is defined by Utah's wrongful lien statute, *see generally* Utah Code Ann. §§ 38-9-101 to -305 (LexisNexis 2018), but the court dismissed that claim, and Zion Village has not appealed that portion of the court's ruling.

preliminary notices. The court determined that the notices on which Pro Landscape relied had been "filed by Chad Hansen, not Pro Landscape," and that the notices had therefore "neglect[ed] to include such basic information as the identity of the actual lien claimant." The court also ordered Pro Landscape to pay Zion Village's reasonable attorney fees and costs.

¶10   With regard to Pacific Coast, the court—after the expedited hearing—issued an initial order nullifying its liens, but the parties later stipulated to setting that order aside and allowing Zion Village to file an amended petition to nullify. After holding a second hearing and considering Zion Village's amended petition, the district court ruled in a subsequent order, dated April 20, 2019, that all three of Pacific Coast's construction liens were invalid because Pacific Coast "did not file the requisite preliminary notices." The court determined that "[t]he notices offered by Pacific [Coast] state parcel numbers that do not exist or are materially incomplete." The court ordered Pacific Coast to pay Zion Village's reasonable attorney fees and costs. Pacific Coast did not appear at either of the two hearings at which the court considered the validity of the preliminary notices, and it made no argument that Zion Village's petition should be dismissed on the basis that it no longer owned the real property in question.

*Attorney Fee Awards*

¶11   Zion Village later filed documentation in an effort to quantify its attorney fee award. It asserted that its total fees and costs incurred to date in the case, against Pro Landscape and Pacific Coast combined, were $23,523.50. Nevertheless, it sought an award of over $17,000 against Pacific Coast and an award of over $13,000 against Pro Landscape, asserting that both defendants were "jointly and severally liable" for certain fees incurred early in the case, which Zion Village believed were applicable to its claims against both defendants. The court

granted Zion Village the relief it requested, ordering Pro Landscape—in a judgment dated July 30, 2019—to pay attorney fees and costs in the amount of $13,324.73 and ordering Pacific Coast—in a judgment dated September 23, 2019—to pay attorney fees and costs in the amount of $17,079.40, making the parties jointly and severally liable for part of the fees. The court later augmented the award in light of fees and costs incurred in connection with post-judgment motions (discussed below), allowing Zion Village to recover an additional $6,322.50 from Pacific Coast and an additional $12,112.19 from Pro Landscape. Pro Landscape filed a notice of appeal on August 29, 2019.

*Pacific Coast's Post-Judgment Motions*

¶12    After the district court's initial rulings, Pacific Coast filed a motion, pursuant to rule 54(b) of the Utah Rules of Civil Procedure, requesting that the court revise its decision and order. In its motion, Pacific Coast argued that the governing statute allows a court to make only "a single factual determination—whether a preliminary notice was filed," and noted that Pacific Coast had filed preliminary notices, even if some of the information contained in those notices was incomplete or inaccurate. Accordingly, Pacific Coast asserted that the court's ruling nullifying its liens was incorrect. On September 15, 2019, after a hearing, the court entered an order denying Pacific Coast's motion.

¶13    Shortly thereafter, on October 3, 2019, Pacific Coast filed a notice of appeal, challenging five of the district court's "rulings and orders": the March 8 and April 20 orders granting Zion Village's petition to nullify the liens; the September 15 order denying Pacific Coast's rule 54(b) motion; the September 23 order granting Zion Village's motion for attorney fees and costs; and the September 23 attorney fee judgment. Pacific Coast never filed a second or amended notice of appeal.

¶14  A few weeks later, on October 25, 2019, Pacific Coast filed another post-judgment motion, this one pursuant to rule 60(b) of the Utah Rules of Civil Procedure. In that motion, Pacific Coast asserted, for the first time, that Zion Village had not been the owner of the property referred to in Pacific Coast's liens at the time Zion Village filed its petitions to nullify those liens. On January 10, 2020, after a hearing, the district court issued an order denying the motion, ruling that Pacific Coast had "not presented a basis for relief sufficient to" justify setting aside the court's order nullifying the liens, and that it had "not presented a meritorious defense."

¶15  After obtaining its first judgment against Pacific Coast, Zion Village asked the district court to issue a writ of execution directing a sheriff or constable to seize some of Pacific Coast's property in order to facilitate a sale of that property to satisfy Zion Village's judgment. The specific property that Zion Village wanted to make subject to a writ of execution was "[a]ny and all of Pacific Coast['s] legal claims, asserted or unasserted, relating to or arising from the Zion Village Resort Project . . . , including legal claims in" the pending action. The court granted the request and issued a writ of execution, authorizing a sheriff or constable to seize Pacific Coast's claims against Zion Village. A few days later, the writ of execution was served on Pacific Coast, and thereby its legal claims against Zion Village were "conveyed to" Zion Village for the purposes of sale. However, no sale of those claims has yet taken place because Pacific Coast, by posting a supersedeas bond, obtained an order from the district court staying all efforts to enforce Zion Village's judgment against Pacific Coast during the pendency of this appeal.

ISSUES AND STANDARDS OF REVIEW

¶16  Pro Landscape and Pacific Coast both appeal, raising several issues for our review. Other than attorney fees, Pro

Landscape brings one issue to our attention: it challenges the district court's decision, following the expedited hearing, to nullify its construction liens after determining that Pro Landscape had not filed valid preliminary notices. Utah appellate courts have not yet had occasion to identify the standard of review to be applied when reviewing a district court's nullification of a construction lien via an "expedited proceeding" under section 38-1a-805 of the Utah Code. The relevant statutory provisions authorize district courts to "schedule an expedited hearing" to consider a properly filed petition to nullify a lien, but the statute does not specify whether the court may consider live testimony at any such hearing. *See* Utah Code Ann. § 38-1a-805(4)(b), (5), (6) (LexisNexis 2018). We conclude that, at least in cases in which the court does not hear live testimony during the expedited hearing, we should review a district court's decision following that hearing for correctness, with no deference afforded to the court's decision.

¶17　In situations where a district court makes a decision based not on live testimony but instead on documentary evidence, oral argument, and statutory interpretation, the district court is in no better position to make that decision than an appellate court is. *See State v. Levin*, 2006 UT 50, ¶ 20, 144 P.3d 1096 (stating that "a single [district] judge is in an inferior position to determine what the legal content of a legal concept should be whereas a panel of appellate judges, with their collective experience and their broader perspective, is better suited to that task" (quotation simplified)). In this case, the district court made its determination by examining copies of the liens and preliminary notices filed by Pro Landscape and comparing those documents to the statutory requirements. All of the evidence the district court considered is in the appellate record; the court's decision was not based on "credibility determinations, the direct observation of witness testimony, [or] other evidence not fully captured in a written appellate record." *See Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 13, 345 P.3d 1253; *see also*

*Amundsen v. University of Utah*, 2019 UT 49, ¶ 19 n.5, 448 P.3d 1224 ("With respect to whether rulings based solely on documentary evidence generally receive deference on appeal, Utah law appears to lean toward correctness review."). And in one similar context—reviewing district court decisions, made after a "summary proceeding," *see* Utah Code Ann. § 38-9-205(3), (4) (LexisNexis 2018), about whether a lien is a "wrongful lien" under section 38-9-102 of the Utah Code—we review for correctness. *See, e.g., Lindstrom v. Custom Floor Covering Inc.*, 2017 UT App 141, ¶ 8, 402 P.3d 171; *Pratt v. Pugh*, 2010 UT App 219, ¶ 7, 238 P.3d 1073. Accordingly, we conclude that, in this case, we should afford the district court's lien nullification decision no deference, and review it for correctness.

¶18    With regard to Pacific Coast's appeal, we address four issues, aside from attorney fees. First, we address—and reject— the arguments made by Zion Village in its motion for summary disposition, in which it asserted that Pacific Coast's appeal had been rendered moot, or entirely subject to dismissal, based on certain subsequent events. We deferred a ruling on the issues raised in the motion for summary disposition until full consideration of the appeal, and Zion Village presses these issues in its brief. These issues present questions of law that we review in the first instance. *See State v. Legg*, 2018 UT 12, ¶ 7, 417 P.3d 592 ("Appellate courts review the issue of mootness de novo." (quotation simplified)).

¶19    Second, we address Pacific Coast's argument that the district court erred by even considering whether its preliminary notices complied with applicable statutory requirements; Pacific Coast contends that, under the statutory provisions governing the expedited proceedings that follow the filing of a petition to nullify a construction lien, a district court may consider only whether a preliminary notice was or was not filed, and may not examine the substance of the document. *See* Utah Code Ann. § 38-1a-805(6). This issue hinges on whether the district court

properly interpreted the relevant statute. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *State v. Outzen*, 2017 UT 30, ¶ 5, 408 P.3d 334 (quotation simplified).

¶20 Third, although Pacific Coast does not challenge the district court's ultimate decision, on the merits, that its preliminary notices did not identify the same property listed in its construction liens, for purposes of logical continuity we briefly address that decision.

¶21 Fourth, Pacific Coast challenges the district court's denial of its rule 60(b) motion. However, after oral argument in this case, we became aware of a potential issue with our appellate jurisdiction to consider this challenge, and we asked the parties for supplemental briefing addressing the jurisdictional issue. Appellate courts "have an independent obligation to ensure that we have jurisdiction over all matters before us," and if we determine that we lack appellate jurisdiction with regard to a particular issue, "we must dismiss" the appeal of that issue. *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 31, 469 P.3d 989 (quotation simplified). Questions about appellate jurisdiction are "question[s] of law." *Id.* ¶ 29. And because we determine that we lack appellate jurisdiction over this part of Pacific Coast's appeal, we do not address the merits of the district court's decision to deny the rule 60(b) motion.

¶22 Finally, both Pro Landscape and Pacific Coast ask us to reverse the district court's awards of attorney fees against them. Under applicable statutory provisions, Zion Village is entitled to an award of "costs and reasonable attorney fees" if "the court determines that the . . . construction lien is invalid," *see* Utah Code Ann. § 38-1a-805(7)(a), but the lien claimants are entitled to an award of "costs and reasonable attorney fees" if "the court determines that the . . . construction lien is valid," *see id.* § 38-1a-805(8)(a). The identity of the party to whom an award of

attorney fees is owed thus depends on the outcome of the proceeding, and on the outcome of the merits of this appeal. However, a court's decision regarding the reasonableness of an attorney fee award is reviewed deferentially, for "patent error or clear abuse of discretion." *Faust v. KAI Techs., Inc.*, 2000 UT 82, ¶ 12, 15 P.3d 1266 (quotation simplified).

## ANALYSIS

### I. Pro Landscape's Appeal

¶23    In its appeal, Pro Landscape asserts that the district court erred in concluding that it had not filed any preliminary notices, and erred by, on that basis, nullifying its construction liens. It asserts that the preliminary notices on which it relies contained all of the statutorily required information, including "the name, address, telephone number, and email address of the person providing the construction work for which the preliminary notice [was] filed." *See* Utah Code Ann. § 38-1a-501(1)(h)(i) (LexisNexis 2018). We agree with Pro Landscape.

¶24    Utah's construction lien statute provides contractors with a remedy when they claim they were not paid for their services, allowing them to place a lien on properties they have worked on in the amount of the unpaid labor or resources contributed. *See generally id.* §§ 38-1a-101 to -805 (LexisNexis 2018); *see also AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986) (per curiam) ("The purpose of the Utah mechanics' lien law is to provide protection to those who enhance the value of a property by supplying labor or materials.").

¶25    Under Utah law, there is an important prerequisite to obtaining a valid construction lien: any person wanting to claim such a lien must first file a preliminary notice with the Utah State Construction Registry (the Registry) within twenty days of

commencing construction work. Utah Code Ann. § 38-1a-501(1)(a). Among other required information, a preliminary notice must include "the name, address, telephone number, and email address of the person providing the construction work for which the preliminary notice is filed." *Id.* § 38-1a-501(1)(h)(i).

¶26     In the preliminary notices on which Pro Landscape relies, "Chad Hansen" is listed as the "Person Furnishing Labor, Service, Equipment or Material," but then, in the "Comments" section, the notices state that the "services [were] provided by Pro Curb USA LLC DBA Pro Landscape USA." Zion Village argues that, because Chad Hansen rather than Pro Landscape is listed on the line asking for identification of the "Person Furnishing Labor, Service, Equipment or Material," the preliminary notices were statutorily insufficient. We disagree.

¶27     The statute requires only that "the name, address, telephone number and email address of the person providing the construction work" be "include[d]" in the preliminary notice; the statute does not require that the necessary information be set forth in any particular order or on any particular line. *See id.* § 38-1a-501(1)(h). While Pro Landscape may have set forth the required information in an unconventional sequence, the preliminary notices it filed contained all statutorily required information, including the identity and contact information of "the person providing the construction work." The preliminary notices clearly indicated that the relevant "services [were] provided by" Pro Landscape. We therefore disagree with the district court's conclusion that the notices "neglect[ed] to include . . . the identity of the actual lien claimant."[5]

---

5. The construction lien statute mandates the application of a "substantial compliance" standard, rather than a strict compliance standard. *See* Utah Code Ann. § 38-1a-501(2)(a)

(continued…)

¶28    Zion Village resists this conclusion by pointing to the practical functioning and purpose of the Registry, which serves as a central database, allowing interested persons to search for preliminary notices and other documents by property owner, contractor, address, and parcel number. *See id.* § 38-1a-201 (LexisNexis 2018).[6] Zion Village asserts that, when it searched

---

(…continued)
(LexisNexis 2018) ("[T]he burden is upon the person filing the preliminary notice to prove that the person has *substantially complied* with the requirements of this section." (emphasis added)). "Compliance with a few—or even many—provisions of a detailed statutory scheme is not the measure of substantial compliance"; rather, substantial compliance with the construction lien statute "is measured by its potential for harm or prejudice," and "[a] defect in compliance may be excused as insubstantial if it cannot have any meaningful impact on other parties." *VCS, Inc. v. La Salle Dev., LLC*, 2012 UT 89, ¶¶ 36–37, 293 P.3d 290. The district court professed to have applied the "substantial compliance" standard, yet nevertheless determined that Pro Landscape's preliminary notices were "not sufficient to meet the burden of substantial compliance." In our view, however, Pro Landscape's preliminary notices not only *substantially* complied with the statutory requirements, but *strictly* complied with them, given that the notices included all required information, albeit in an unconventional sequence.

6. The Registry is designed to "help[] keep property owners informed of all parties that supply services, materials and/or equipment to a construction project on their property." *SCR Guide > Owners*, Utah State Construction Registry, https://secure.utah.gov/scr/guide/owners.html [https://perma.cc/5FGT-LYDU]; *see also* Jim Barber, *There's a New Lien Law in Town: Are Your Lien Rights Protected?*, Utah B.J., Mar.–Apr. 2006, at 46 (stating that the Registry is "a standardized, online system for

(continued…)

the Registry's database for preliminary notices filed by Pro Landscape, none turned up in the search results because "Chad Hansen" and not Pro Landscape had been listed as the "Person Furnishing Labor, Service, Equipment or Material." It asserts that interested persons should be able to rely on search results from the Registry's database, without bearing what it perceives to be an onerous "burden" of "clicking individually through the dozens of notices, loans, permits, etc. related to each parcel number, and reviewing line by line the details of each entry, including comments." We are unpersuaded.

¶29   Indeed, as already noted, the relevant statutory provisions do not require that the necessary information be listed in any particular order or manner. *See id.* § 38-1a-501(1)(h). So long as the statutorily required information is included, the requirements of the statute are satisfied, regardless of whether a search of the Registry's database in any given case is efficient. In the end, what matters is whether the statutorily required information is contained in the preliminary notice, and meaningful assessment of that issue may require examination of the actual notice itself, rather than just a search results page from the Registry's database.

¶30   While it is unfortunate that Zion Village's database search suggested that Pro Landscape had not filed any preliminary notices, our examination of the relevant notices demonstrates that Pro Landscape did file four proper preliminary notices, each of which identified the same property later referenced in the construction liens, and each of which included "the name, address, telephone number, and email address of the person

---

(…continued)
filing and managing notices of commencement, preliminary notices, and notices of completion, thus facilitating compliance with" the construction lien statute).

providing the construction work for which the preliminary notice is filed." *See id.* § 38-1a-501(1)(h)(i), (vii). The district court therefore erred when it determined that Pro Landscape had failed to file valid preliminary notices, and erred by invalidating Pro Landscape's construction liens on that basis.

## II. Pacific Coast's Appeal

### A.     Zion Village's Motion for Summary Disposition

¶31     Before turning to the merits of Pacific Coast's appeal, we first discuss the issues raised in Zion Village's motion for summary disposition of Pacific Coast's appeal. In that motion, and again in its briefing, Zion Village makes two arguments for disposing of the entirety of Pacific Coast's appeal before reaching its merits. First, Zion Village argues that, because Pacific Coast did not file an action to enforce its construction liens within 180 days after filing its notices of construction liens (as required by statute), it has "failed to preserve any legal claim" and has thereby forfeited the right to bring this appeal. Second, Zion Village asserts that it now owns Pacific Coast's legal claims, and seeks dismissal of them on that basis. But on the record before us, neither argument provides a basis for summary dismissal of Pacific Coast's appeal.

¶32     Zion Village correctly points out that, "[i]n order to enforce a . . . construction lien," a claimant is obligated to "file an action to enforce the lien . . . within 180 days after" recording the lien. *See* Utah Code Ann. § 38-1a-701(2)(a)(ii) (LexisNexis 2018). If no such enforcement action is filed within that 180-day timeframe, the "construction lien is automatically and immediately void." *Id.* § 38-1a-701(4)(a). Pacific Coast recorded its liens in November and December 2018, and it is undisputed that Pacific Coast did not file any enforcement action within 180 days of recording the liens. However, Pacific Coast notes that, in April 2019, before the 180-day period expired, the district court

granted Zion Village's petition to nullify its construction liens, and asserts that it could not have filed an action to enforce liens that had been nullified by court order. Citing Utah case law, Pacific Coast asserts that the time period within which it needed to file any enforcement action was tolled pending appeal of the district court's nullification order. *See Sittner v. Schriever*, 2001 UT App 99, ¶ 17, 22 P.3d 784 (stating that where "erroneous adverse judgments procured by the debtor prevented [the lienholder] from enforcing [the] lien," the debtor is estopped from asserting a statute of limitations defense during the time when an adverse ruling prevents the lienholder from enforcing the lien); *see also Free v. Farnworth*, 188 P.2d 731, 734–35 (Utah 1948), *superseded by statute on other grounds as recognized in Gildea v. Wells Fargo Bank, NA*, 2015 UT 11, ¶ 30, 347 P.3d 385. However, it is unclear whether the principles of estoppel set forth in the cases relied upon by Pacific Coast apply to the statutory time periods that govern in the construction lien context. *See AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 290–92 (Utah 1986) (per curiam) (in a different context, declining to apply principles of estoppel to mechanic's lien statutory periods).

¶33   But we need not resolve this issue here, because the matter is not ripe for decision. If and when Pacific Coast files an enforcement action,[7] the court in that case will need to determine whether that action was timely filed and, as part of that inquiry, will need to determine whether the statutory time period was tolled in this situation. We consider it premature to weigh in on the timeliness of an enforcement action that has not been, and may never be, filed. We therefore decline Zion Village's invitation to dismiss Pacific Coast's appeal on this basis.

---

7. Given our affirmance, *infra* ¶¶ 37–44, of the district court's order nullifying Pacific Coast's liens, it is extremely unlikely that any such enforcement action will ever be filed.

¶34 Next, Zion Village asserts that Pacific Coast lacks standing because it is no longer in possession of its legal claims, following service of Zion Village's writ of execution on those claims. Under Utah law, where one litigant is a judgment creditor of its litigation opponent, it is possible for the judgment creditor to execute upon and purchase its opponent's legal claims, and then seek their dismissal. *See, e.g.*, *Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶ 15, 449 P.3d 20 (noting that the defendant "secured a judgment" against the plaintiff, "sought a writ of execution, held a constable sale, purchased [the plaintiff's] choses in action against itself, substituted itself as plaintiff, and extinguished all claims against itself," and stating that this procedure was "authorized"); *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699 (stating that "a defendant can purchase claims, i.e., choses in action, pending against itself and then move to dismiss those claims"). But execution upon those claims is only the first step in the process; the claims do not become the property of someone other than their original owner until purchased by another party at a duly noticed sale.

¶35 In this case, Zion Village has executed upon Pacific Coast's legal claims, but it has not yet been able to schedule and hold a sale of those claims due to the fact that Pacific Coast, by posting a supersedeas bond, obtained an order from the district court staying all efforts by Zion Village to enforce its judgment. As things now stand, Zion Village is holding those claims pending sale, but neither Zion Village nor any other third party has yet purchased them. Until someone else purchases them, those claims remain the property of Pacific Coast. Accordingly, Zion Village does not yet have the right to substitute itself as plaintiff and seek dismissal of those claims.

¶36 Thus, Zion Village is not entitled to summary disposition of Pacific Coast's appeal, on either asserted ground. We therefore turn to the merits of that appeal.

B.     The Scope of the Expedited Hearing

¶37   Pacific Coast first asserts that the district court exceeded its statutory authority by considering, in the context of the expedited proceeding, the contents of the preliminary notice. Pacific Coast contends that the relevant statute limits the scope of a court's inquiry during an expedited proceeding following the filing of a petition to nullify, and allows a court to consider only whether a preliminary notice was filed at all, and thus forbids it from considering the contents of such notices, and in particular forbids it from examining whether the notices relate to the same property as the later-filed liens. The district court found this argument unpersuasive, and so do we.

¶38   Under relevant statutory provisions, a landowner who believes that a construction lien claimant has failed to "timely file a preliminary notice under Section 38-1a-501" "may petition the district court . . . for summary relief to nullify" the lien. *See* Utah Code Ann. § 38-1a-805(1) (LexisNexis 2018). If the petition is correctly filed, the court "shall schedule an expedited hearing" to consider whether the "lien is invalid because the lien claimant failed to file . . . a preliminary notice." *Id.* § 38-1a-805(4)(b). "An expedited proceeding under this section may only determine . . . whether the lien claimant filed a notice of preconstruction service or a preliminary notice" and, if not, "whether the lien claimant's preconstruction lien or construction lien is valid." *Id.* § 38-1a-805(6).

¶39   Our "overarching goal," in interpreting a statute, is "to implement the intent of the legislature." *See State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92. In attempting to ascertain that intent, we start with "the language and structure of the statute." *Id.* "Often, statutory text may not be plain when read in isolation, but may become so in light of its linguistic, structural, and statutory context." *Id.* (quotation simplified). "The reverse is equally true: words or phrases may appear

unambiguous when read in isolation, but become ambiguous when read in context." *Id.* For this reason, "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous in order to give effect to every word in the statute." *Id.* (quotation simplified).

¶40 Pacific Coast rests its argument on a strict reading of subsection (6), which states that, in an expedited proceeding, the court "may only determine whether the lien claimant filed a . . . preliminary notice" and, if not, whether the lien is invalid on that basis. *See* Utah Code Ann. § 38-1a-805(6). We acknowledge this language, and take Pacific Coast's point that this section of the construction lien statute "could have been drafted more precisely." But when we consider the statute as a whole, we reach a different conclusion than Pacific Coast.

¶41 In subsection (1) of the relevant statute, the legislature set forth the framework for the "summary relief" that may be sought by filing a petition to nullify a construction lien. *See id.* § 38-1a-805(1). As applicable here, such "summary relief" is available where "*the lien claimant* did not *timely* file a preliminary notice *under Section 38-1a-501*." *Id.* § 38-1a-805(1)(a)(ii) (emphasis added). In our view, this language empowers a court to examine the contents of the preliminary notice when considering a petition to nullify. For instance, the statute clearly provides for summary relief only if the preliminary notice is "timely" filed, suggesting that a court is expected to assess the timeliness of the preliminary notice, and not just whether a notice was merely filed. *See id.* Moreover, both subsection (1) and subsection (6) direct the court to compare the lien and the preliminary notice, and assess whether it was "the lien claimant," rather than another party, who filed the relevant preliminary notice. *Id.* § 38-1a-805(1)(a)(ii),

(6)(a). As demonstrated above, this inquiry—a form of which we conducted in connection with Pro Landscape's appeal, *see supra* ¶¶ 23–30—necessarily requires the court to examine the contents of the preliminary notice. And finally, we note that the statute requires a court, in considering a petition to nullify, to assess whether the preliminary notice was filed "under Section 38-1a-501," *see id.* § 38-1a-805(1)(a)(ii), which is the section that sets forth the items that a proper preliminary notice "shall include," *see id.* § 38-1a-501(1)(h). Among the items required under section 38-1a-501 is some identification of the property to which the preliminary notice is connected. *Id.* § 38-1a-501(1)(h)(vii). For all of these reasons, after considering the statute as a whole, we conclude that a court considering a petition to nullify in an expedited proceeding is not limited to examining merely whether a preliminary notice has been filed, but instead has statutory authority to assess whether the preliminary notice met the requirements of section 38-1a-501, including whether the notice refers to the same property identified in the later-filed construction lien.

¶42   And in any event, Pacific Coast's argument, taken to its logical conclusion, would lead to absurd consequences. *See Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000 (stating that, where a statute can plausibly be read two different ways, the "absurd consequences canon" may be invoked to "resolve[ the] ambiguity by choosing the reading that avoids absurd results" (quotation simplified)). If the district court were limited to examining merely whether *any* preliminary notice was filed, and were forbidden from examining the contents of the notice to determine whether the notice had anything to do with the property that was the subject of the later-filed construction lien, then a lien claimant could resist a petition to nullify simply by pointing to a preliminary notice filed with regard to a piece of property in a different city or county, or even to a blank preliminary notice containing only the name of the claimant.

Such an interpretation would be inconsistent with the purpose of the construction lien statutes generally, *see VCS, Inc. v. La Salle Dev., LLC*, 2012 UT 89, ¶ 20, 293 P.3d 290 (opining that Utah's "mechanic's lien statutes are aimed not only at fortifying the claim-filing system for contractors, but also at assuring clear notice for property owners and facilitating finality in a field—real estate transactions—where that policy is paramount"), as well as with the purpose of the preliminary notice requirement and the "summary" proceeding put in place to invalidate liens unconnected to a preliminary notice.

¶43 Accordingly, we conclude that the district court correctly interpreted the applicable statutes, properly considered the contents of Pacific Coast's preliminary notices, and appropriately did not limit itself to merely considering whether Pacific Coast had filed *any* preliminary notice.

C.     The Merits of the District Court's Inquiry

¶44 After considering the contents of Pacific Coast's preliminary notices, the district court found them to be infirm, because the properties identified in the preliminary notices were either nonexistent or were different than the properties identified in the later-filed construction liens. As noted above, among the information that must be included in a preliminary notice in order for it to be valid is an identification of the property to which the preliminary notice is connected. Utah Code Ann. § 38-1a-501(1)(h)(vii). The district court found, upon examining the preliminary notices submitted by Pacific Coast, that the notices "state[d] parcel numbers that do not exist or are materially incomplete." Pacific Coast does not challenge the district court's determination that its preliminary notices do not properly identify the real property in question, and therefore we take it as established, for purposes of this appeal, that the preliminary notices Pacific Coast filed are not sufficient.

D.      Pacific Coast's Rule 60(b) Motion

¶45    Instead of challenging the district court's ruling on its merits, Pacific Coast makes a different argument. It contends that, at the time Zion Village filed its petition to nullify Pacific Coast's liens, Zion Village no longer owned most of the real property identified in those liens. But Pacific Coast did not raise this argument until after the district court had already entered final judgment in this matter, and it did so in the form of a rule 60(b) motion filed after it had already filed its notice of appeal from certain specified orders in the underlying case. And after the district court denied its rule 60(b) motion a few months later, Pacific Coast never filed a second or amended notice of appeal purporting to include in this appeal a challenge to the court's ruling on the rule 60(b) motion. Nevertheless, in its brief, Pacific Coast identified its challenge to the court's rule 60(b) ruling as one of the issues it wanted to bring to our attention on appeal, and Zion Village responded to that argument on its merits, without raising any concerns about appellate jurisdiction.

¶46    After oral argument, we realized that we may not have appellate jurisdiction to consider Pacific Coast's challenge to the district court's rule 60(b) ruling and, recognizing our "independent obligation to ensure that we have jurisdiction over all matters before us," *see Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 31, 469 P.3d 989, we requested supplemental briefing on the question. After reviewing that supplemental briefing, we conclude that we have no appellate jurisdiction to consider Pacific Coast's challenge to the district court's ruling on the rule 60(b) motion, and we therefore dismiss that portion of Pacific Coast's appeal.

¶47    In order to invoke our appellate jurisdiction, a party must generally file a notice of appeal within thirty days of the date of entry of the final order or judgment appealed from. Utah R. App. P. 4(a). In that notice of appeal, the appellant must "designate

the judgment or order, or part thereof, appealed from." *See id*. R. 3(d). "[R]ule 3(d)'s requirement is jurisdictional." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474; *see also In re adoption of B.B.*, 2017 UT 59, ¶ 106, 417 P.3d 1 (Lee, A.C.J., opinion of the court on this issue) ("An order not identified in the notice of appeal falls beyond our appellate jurisdiction. And the failure to identify an order is a non-waivable (jurisdictional) defect."). On October 3, 2019—within thirty days of entry of final judgment—Pacific Coast filed a notice of appeal that identified five different orders from which it was appealing. Through this filing, Pacific Coast successfully invoked our appellate jurisdiction to consider its challenges to the orders identified in the October 3 notice of appeal.

¶48　But at the time it filed its notice of appeal, Pacific Coast had not yet even filed its rule 60(b) motion, and of course the court had not issued any ruling thereon. Under applicable rules, and as a matter of chronology, the October 3 notice of appeal cannot have properly invoked our appellate jurisdiction to consider a challenge to any future ruling on an as-yet-unfiled rule 60(b) motion. Indeed, our appellate rules provide that any "notice of appeal filed after announcement or entry of judgment, but before entry of an order disposing of [a rule 60(b) motion], . . . is effective to appeal only from the underlying judgment," and that a party wishing "[t]o appeal from a final order disposing of a [rule 60(b) motion] . . . must file a notice of appeal or an amended notice of appeal within the prescribed time measured from entry of the order." *See* Utah R. App. P. 4(b)(2). Indeed, a court's "ruling on a rule 60(b) motion culminates in a separate, appealable order and, thus, may not be included in an existing appeal because the issues raised in the appeal predated the ruling on the rule 60(b) motion." *Dennett v. Ferber*, 2013 UT App 209, ¶ 3, 309 P.3d 313 (per curiam) (quotation simplified). In order to invoke our appellate jurisdiction to review a court's decision on a rule 60(b) motion, parties generally "must either file a separate notice of appeal regarding those orders or, if they

are entered before the filing of the notice of appeal, at least specifically mention them in the notice of appeal being taken from the final judgment." *Wilson v. Sanders*, 2019 UT App 126, ¶ 29, 447 P.3d 1240. Thus, an appellate court "lacks jurisdiction to resolve issues raised in a ruling on a rule 60(b) motion unless a new notice of appeal has been filed." *Dennett*, 2013 UT App 209, ¶ 3; *see also Pon v. Brewer*, 2020 UT App 99, ¶ 7, 468 P.3d 581 ("[I]f a party fails to file an amended notice of appeal after denial of a rule 60(b) motion, an appellate court lacks jurisdiction to consider issues raised in that motion."). In this case, as noted, Pacific Coast did not file a second or amended notice of appeal purporting to invoke our appellate jurisdiction to consider its challenge to the district court's rule 60(b) decision.

¶49     Pacific Coast recognizes that it failed to file a second or amended notice of appeal, and acknowledges that we do "not have jurisdiction to decide any issues from Pacific Coast's rule 60(b) motion that are subject to preservation and notice of appeal requirements." But Pacific Coast asserts that the argument it raised in its rule 60(b) motion—that Zion Village did not own the property at the time it filed its petition to nullify—implicates the district court's subject-matter jurisdiction to adjudicate the petition, and thus may be considered at any time in connection with our "independent obligation" to examine jurisdictional issues. We see two separate problems with this argument.

¶50     First, while we have an "independent obligation" to assess our own appellate jurisdiction at any time, *see Trapnell*, 2020 UT 44, ¶ 31, we do not have free-standing authority—let alone an obligation—to assess the propriety of the district court's exercise of subject-matter jurisdiction, absent a timely appeal. We are aware of no case in which an appellate court has, *sua sponte* or otherwise, agreed to entertain an untimely appeal merely because that appeal implicates a district court's subject-matter jurisdiction. No matter what the underlying issue is, litigants must file a timely and proper appeal in order for this

court to have *appellate* jurisdiction to consider the matter. *See In re adoption of B.B.*, 2017 UT 59, ¶ 104 (stating that, "[w]hen a court enters a final order . . . , that order is binding unless and until a litigant successfully challenges the order's validity," and "[t]his is true even in the context of subject-matter jurisdiction"; and concluding that appellate courts "do not have power to *sua sponte* reconsider the premises of jurisdiction of a final judgment that has not been collaterally attacked by a litigant"). Pacific Coast did not mount a timely and proper appeal from the district court's decision to deny its rule 60(b) motion, and therefore it has not properly invoked our appellate jurisdiction to consider its challenge to the rule 60(b) ruling, regardless of whether the rule 60(b) motion raised matters implicating the district court's subject-matter jurisdiction.

¶51    Second, Pacific Coast misperceives the scope of the term "subject-matter jurisdiction." It is precisely because subject-matter jurisdiction is "special"—and often implicates exceptions to our rules of preservation and waiver—that "our law has been careful to cabin" its definition. *See id.* ¶¶ 128–29; *see also id.* ¶ 129 ("We limit this concept carefully because an expansive notion of subject-matter jurisdiction will undermine the basic premises of our justice system."). "The concept of subject-matter jurisdiction" is construed narrowly, and "encompasses (a) statutory limits on the authority of the court to adjudicate a class of cases, and (b) timing and other limits on the justiciability of the proceeding before the court (such as standing, ripeness, and mootness)." *Id.* ¶ 121 (quotation simplified).

¶52    Pacific Coast acknowledges that Utah district courts have authority to adjudicate construction lien cases—the class of case initiated by Zion Village when it filed its petition to nullify. *See id.* ¶ 143 (stating that "in Utah our district courts are courts of general jurisdiction" and "have general power to hear all matters civil and criminal so long as they are not excepted in the Utah Constitution and not prohibited by law" (quotation simplified)).

Pacific Coast asserts, however, that Zion Village lacked "statutory standing" to bring its petition because it did not own the property at the time the petition was filed, and posits that this type of "standing" implicates subject-matter jurisdiction. But there is ample case law indicating otherwise.

¶53 The type of "standing" that implicates subject-matter jurisdiction is "[s]tanding of the constitutional variety," a concept that concerns itself with "injury, causation, and redressability," *see Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017), and asks "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation" of the court's jurisdiction "and to justify exercise of the court's remedial powers on his [or her] behalf," *see Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quotation simplified). This type of standing inquiry "is not the same as legal capacity to sue," *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶ 51, 391 P.3d 222 (quotation simplified), and does not include questions about whether a plaintiff meets "statutory prerequisites" for a claim, *see In re adoption of B.B.*, 2017 UT 59, ¶ 124 (stating that any "deficiency in this or any other [statutory] prerequisite falls outside the traditional scope of subject-matter jurisdiction"); *id.* ¶ 156 (stating that "there is no such thing as a defect in subject-matter jurisdiction that arises only if the court decides an issue one way"). Indeed, our supreme court has long held that "[t]he objection that the plaintiff has not legal capacity to sue, or to maintain or prosecute an action" is "like one that the plaintiff is not the real party in interest," and does not implicate subject-matter jurisdiction but, rather, is an objection "that, under all of the codes, must be taken at the proper time and in the proper manner or it will be deemed waived." *See Tooele Meat & Storage Co. v. Fite Candy Co.*, 168 P. 427, 428 (Utah 1917); *see also J.B. Colt Co. v. District Court of Fifth Judicial Dist.*, 269 P. 1017, 1019 (Utah 1928) (stating that an argument that a party does "not have legal capacity to maintain" an action is an affirmative

defense that "must be timely taken by demurrer or answer, or such defense is deemed waived").[8]

¶54    Yet litigants often attempt to mislabel "capacity" or statutory-prerequisite questions as "standing" concerns. *See, e.g., Norris*, 869 F.3d at 366 (noting that "the 'standing' label is also sometimes placed on [a] real-party-in-interest challenge"); *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 163 n.7 (5th Cir. 2016)

---

8. Recently, our supreme court appeared to call into question the concepts set forth in this case law, but stopped short—in that case, at least—of fully addressing the issue on its merits. *See Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶¶ 24–26, 449 P.3d 112. Until our supreme court officially changes the landscape, however, we are bound to follow both *Schvaneveldt*—as binding court of appeals precedent, *see In re adoption of B.N.A.*, 2018 UT App 224, ¶ 22, 438 P.3d 10 (stating that "one panel of this court is bound to follow the previous decisions of another panel of this court")—and the older supreme court cases. *See Ortega v. Ridgewood Estates*, 2016 UT App 131, ¶ 30, 379 P.3d 18 (stating that the court of appeals is "bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court"). And in any event, we consider *Schvaneveldt* and the older supreme court cases not only binding but also persuasive, as well as jurisprudentially consistent with case law from other jurisdictions, including the U.S. Supreme Court. *See, e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (opining that "statutory standing . . . does not implicate subject-matter jurisdiction" (quotation simplified)); *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) (holding that a question whether a plaintiff is the proper party to bring suit is one of "contractual or statutory standing and does not go to a court's subject matter jurisdiction"); *Niemi v. Lasshofer*, 770 F.3d 1331, 1346 (10th Cir. 2014) (stating that a "statutory standing argument does not implicate subject-matter jurisdiction").

(noting that "the intermingling of standing and capacity issues is not uncommon"); *In re Unger & Assocs., Inc.*, 292 B.R. 545, 550 (Bankr. E.D. Tex. 2003) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle."). But statutory standing is not jurisdictional:

> Despite this cross labeling, there is a key jurisdictional distinction between a challenge that a plaintiff lacks [constitutional] standing and one that she is not the real party in interest. The latter presents a merits question: who, according to the governing substantive law, is entitled to enforce the right? It is thus like contractual or statutory standing and does not go to a court's subject matter jurisdiction.

*Norris*, 869 F.3d at 366 (quotation simplified); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (opining that "statutory standing . . . does not implicate subject-matter jurisdiction" (quotation simplified)); *cf. In re adoption of B.B.*, 2017 UT 59, ¶ 130 n.14 ("We have routinely rebuffed attempts by litigants to recast merits arguments as issues of subject-matter jurisdiction.").

¶55 The argument Pacific Coast raised in its rule 60(b) motion is that Zion Village cannot meet the statutory prerequisites for filing a petition to nullify, because at the time it filed its petition it did not own the real property at issue. *See* Utah Code Ann. § 38-1a-805(1) (stating that "[a]n owner of an interest in a project property . . . may petition the district court" for lien nullification). But this argument does not implicate the district court's subject-matter jurisdiction. Utah district courts clearly have jurisdiction to adjudicate the class of cases—petitions to nullify construction liens—to which this case belongs. *See In re adoption of B.B.*, 2017 UT 59, ¶ 143. And while Pacific Coast has

raised an issue of "statutory standing," the question of whether Zion Village—or a different potential plaintiff who might actually own the property—meets the statutory prerequisites for filing suit is not a question that implicates the district court's subject-matter jurisdiction. Thus, even if there were an exception to appellate filing rules that would enable Pacific Coast to file an improper or untimely appeal in order to raise challenges to a district court's subject-matter jurisdiction, such an exception would not apply here, because the specific challenge Pacific Coast raised in its rule 60(b) motion does not implicate the district court's subject-matter jurisdiction.

¶56   Accordingly, we lack appellate jurisdiction to consider Pacific Coast's challenge to the district court's denial of the rule 60(b) motion. When we lack appellate jurisdiction, we "retain[] only the authority to dismiss" the appeal. *See Varian-Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 570 (Utah Ct. App. 1989). Thus, we dismiss that part of Pacific Coast's appeal that seeks to challenge the district court's ruling on the rule 60(b) motion. And because we dismiss that part of Pacific Coast's appeal, and reject Pacific Coast's other arguments on their merits, we affirm the district court's order nullifying Pacific Coast's construction liens.

### III. Attorney Fees and Costs

¶57   Both Pro Landscape and Pacific Coast appeal the awards of attorney fees and costs entered against them. We address the claim of each appellant separately, in turn.

A.    Pro Landscape

¶58   The district court ordered Pro Landscape to pay Zion Village's attorney fees and costs based on the statutory provision stating that, if the court determines that "the construction lien is invalid," it "shall issue an order that . . . awards costs and reasonable attorney fees to the petitioner." *See* Utah Code Ann.

§ 38-1a-805(7)(a)(iv) (LexisNexis 2018). But, for the reasons set forth, *see supra* ¶¶ 23–30, the court erred by determining that Pro Landscape failed to file valid preliminary notices, and erred by nullifying Pro Landscape's liens on that basis. It follows therefrom that we must reverse the court's order commanding Pro Landscape to pay Zion Village's attorney fees and costs.

¶59 But Pro Landscape asks us to go one step further, and remand with instructions to order Zion Village to pay Pro Landscape's attorney fees and costs, pursuant to the statutory provision requiring a court to "award costs and reasonable attorney fees to the lien claimant" if the court determines that "the construction lien is valid." *See id.* § 38-1a-805(8)(a)(ii); *see also Federated Cap. Corp. v. Haner*, 2015 UT App 132, ¶ 11, 351 P.3d 816 ("In Utah, attorney fees are awardable . . . if authorized by statute . . . ." (quotation simplified)). This request is well-taken. The only argument Zion Village made for the invalidity of Pro Landscape's construction liens was the one we have here rejected—that Pro Landscape did not file preliminary notices. Because we have determined that Pro Landscape did file preliminary notices that complied with the relevant statutory provisions, and because Zion Village has made no other argument for the invalidity of Pro Landscape's construction liens, it follows that Pro Landscape's liens are valid. Zion Village's petition to nullify them should be dismissed, and Pro Landscape is entitled to an award of "costs and reasonable attorney fees," including fees incurred on appeal.

B. Pacific Coast

¶60 The district court also ordered Pacific Coast to pay Zion Village's attorney fees, based on the same statutory provision. *See* Utah Code Ann. § 38-1a-805(7)(a)(iv). We have affirmed the court's determination that Pacific Coast's construction liens were invalid, and therefore we likewise affirm the district court's determination that Pacific Coast should be ordered to pay Zion

Village's reasonably incurred attorney fees and costs, including fees incurred on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (stating that "when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal" (quotation simplified)); *accord Westgate Resorts, Ltd. v. Adel*, 2016 UT 24, ¶ 33, 378 P.3d 93.

¶61 But Pacific Coast challenges four different aspects of the district court's fee award. The first of Pacific Coast's arguments relates to the sufficiency of the district court's findings to support the fee awards, which arguments present "question[s] of law [we] review[] for correctness," *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998), while the other three arguments attack the reasonableness of particular aspects of the court's award, which we review for an abuse of discretion, *Faust v. KAI Techs., Inc.*, 2000 UT 82, ¶ 12, 15 P.3d 1266. We begin with the issue relating to the sufficiency of the district court's findings.

¶62 Pacific Coast first argues that the district court erred by not requiring Zion Village to allocate its fees between its successful preliminary notice claim and unsuccessful wrongful lien claim. A party seeking fees "must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." *Foote*, 962 P.2d at 55 (quotation simplified). But what is most important is that time spent on either unsuccessful claims or claims for which there is no entitlement to attorney fees not be included in the fee request; parties need not take the time to allocate unrecoverable fees between categories (2) and (3). *See Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶ 15, 978 P.2d 470 (finding the claimant's allocation sufficient because it "set out the time and fees expended for successful claims for which there was an entitlement to fees" and "eliminated fees for all non-recoverable"

claims, even though it "forewent the exercise, perhaps meaningless in retrospect, of allocating unrecoverable fees between category (2) and category (3)").

¶63 Zion Village's fee application met these standards. The affidavit filed in support of its fee application averred that "[f]ees not associated with the prevailing claims have been adjusted and deducted from the billing statements and are not included in the amounts stated herein." Zion Village's counsel reiterated to the district court at oral argument regarding the first fee request that the "adjustment calculation" had been made to remove fees associated with the unsuccessful wrongful lien claim. Moreover, the district court made specific findings that "Zion Village has reduced [its attorney fees] claim as an adjustment for the unsuccessful claim[] for Wrongful Lien," and that "[m]uch of the work performed for the successful claim to nullify the liens applies to the unsuccessful claim of wrongful lien." Pacific Coast contests this finding, but has not carried its burden of demonstrating error therein. Indeed, Pacific Coast points to no particular time entry in Zion Village's fee affidavits that it believes represents time spent in aid of the unsuccessful wrongful lien claim. We therefore reject Pacific Coast's contention that the district court's allocation between fees incurred for successful and unsuccessful claims was inadequate.[9]

---

9. Pacific Coast also asserts that the district court failed to properly allocate Zion Village's attorney fees and costs between the two defendants, and erred by ordering that some of those fees and costs be paid by both Pacific Coast and Pro Landscape, jointly and severally. We need no longer reach this issue, however, because we have reversed the district court's order commanding Pro Landscape to pay any of Zion Village's attorney fees, and therefore Pro Landscape is no longer responsible for paying any of Zion Village's attorney fees.

(continued…)

¶64 Pacific Coast argues that the district court abused its discretion in three ways. First, Pacific Coast asserts that it was error to approve any of the fees Zion Village incurred prior to March 28, 2019, because on that date Zion Village stipulated to set aside the district court's initial order with respect to Pacific Coast and agreed to file an amended petition against Pacific Coast. But Pacific Coast cites no authority to support this assertion, and does not explain why it would be unreasonable to award fees for any work incurred prior to the court's first ruling, even if the parties later stipulated to set it aside; it merely presents the conclusory assertion that doing so was unreasonable. Under these circumstances, Pacific Coast has not carried its burden on appeal to adequately challenge this aspect of the fee award as an abuse of discretion. *See Dale K. Barker Co. v. Bushnell*, 2010 UT App 189, ¶ 15 n.12, 237 P.3d 903 (declining to address argument that "precomplaint attorney fees should not be awarded" because the "issue [was] inadequately briefed"). And in any event we are not persuaded by Pacific Coast's conclusory assertion. It seems reasonable to us that Zion Village would be entitled to attorney fees for at least some of the time it spent in the initial stages of the case investigating the matter, preparing its petition, and appearing at the first hearing. Certainly, Pacific Coast has not persuaded us that the court abused its discretion in including such time in its fee award.

---

(…continued)

Nevertheless, we share Pacific Coast's skepticism regarding the propriety of ordering two different defendants, defending two separate claims, to pay fees jointly and severally, especially where those defendants have not been found jointly and severally liable on the merits. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998) (mandating that fee requests be "allocated as to separate claims and/or parties"); *see also Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) ("Claims must also be categorized according to the various opposing parties.").

¶65    Pacific Coast next argues that the district court abused its discretion by awarding fees incurred for clerical tasks undertaken by Zion Village. Citing federal cases but no Utah case law, Pacific Coast asserts that "this type of administrative and clerical work is part of attorney overhead and is not properly recoverable," and recovery is therefore disallowed in Utah. However, the text of rule 73 explicitly authorizes the recovery of fees relating to work by paralegal and administrative staff. *See* Utah R. Civ. P. 73(c) (requiring that a motion filed to request a fee award "must be supported by an affidavit or declaration that reasonably describes the time spent and work performed, including for each item of work the name, position (such as attorney, *paralegal*, *administrative assistant*, etc.) and hourly rate of the persons who performed the work, and establishes that the claimed fee is reasonable" (emphasis added)). Therefore, the district court did not abuse its discretion by awarding fees related to administrative and clerical work.

¶66    Finally, Pacific Coast argues that the district court abused its discretion by allowing Zion Village to recover for unauthorized costs. Specifically, it challenges the award of $48.00 in costs for "obtaining a certified copy of an abstract of judgment and recording that abstract with the county recorder." While rule 54(d) does not define "costs,"

> [t]he generally accepted rule is that it means those fees which are required to be paid to the court and to witnesses, and for which the statutes authorize to be included in the judgment. There is a distinction to be understood between the legitimate and taxable "costs" and other "expenses[]" of litigation[,] which may be ever so necessary, but are not properly taxable as costs.

*Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980) (quotation simplified). In *Frampton*, the Utah Supreme Court held that

"certified copies" qualify as ancillary expenses that are "not properly taxable as costs" that can be requested by a prevailing party. *Id.* While the district court can certainly "exercise reasonable discretion in regard to the allowance of costs," we cannot conclude that awarding the costs of making certified copies falls within that reasonable discretion when our supreme court has explicitly held to the contrary. *See id.* at 773–74. Thus, the district court abused its discretion by considering "certified copies" to be a recoverable cost.

¶67   In all other respects, however, we affirm the district court's award of attorney fees to Zion Village from Pacific Coast.

CONCLUSION

¶68   With regard to Pro Landscape's appeal, we conclude that Pro Landscape's preliminary notices complied with the relevant statutory requirements, and therefore its construction liens were valid. Accordingly, we reverse the district court's order nullifying Pro Landscape's construction liens, as well as the court's order requiring Pro Landscape to pay attorney fees. We also conclude that Pro Landscape is entitled to recover fees from Zion Village, including fees incurred on appeal. We remand for entry of judgment in favor of Pro Landscape, and for a quantification of Pro Landscape's reasonable attorney fees.

¶69   With regard to Pacific Coast's appeal, we reject Zion Village's arguments for summary dismissal of the appeal, but we agree with Zion Village that the district court properly examined the substance of the preliminary notices during the expedited hearing. We also dismiss, for lack of appellate jurisdiction, that part of Pacific Coast's appeal in which it asks us to review the district court's decision to deny its rule 60(b) motion. We therefore affirm the district court's determination that Pacific Coast's construction liens were invalid, as well as the court's

determination that Zion Village is entitled to recover attorney fees from Pacific Coast, including fees incurred on appeal. However, we reverse one minor aspect of the court's fee award, and remand for an adjustment of that award.

———————